(159 App. Div. 422.)

### DEMUTH v. KEMP.

### SAME v. KEMP et al.

(Supreme Court, Appellate Division, First Department. December 5, 1913.)

1. TRUSTS (§ 151*)—RIGHTS AND REMEDIES OF CREDITORS OF CESTUI QUE TRUST.
   Real Property Law (Consol. Laws 1909, c. 50) § 98, providing that where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of the rents and profits beyond a sum necessary for the education and support of the beneficiary shall be liable to the claims of his creditors in the same manner as other personal property, which cannot be reached by execution, also applies to income derived from trusts of personal property.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 195, 195½, 197; Dec. Dig. § 151.*]

2. TRUSTS (§ 151*)—RECOVERY OF SURPLUS—CONDITIONS PRECEDENT—EXECUTION AND RETURN.
   The Code provisions relative to the issue and return of an execution against the property of a judgment debtor as a prerequisite of a creditor's action applies to an action brought to reach surplus income under Real Property Law (Consol. Laws 1909, c. 50) § 98, providing that, where a trust is created to receive the rents and profits of real property and no valid direction for accumulation is given, the surplus of the rents and profits beyond the sum necessary for the education and support of the beneficiary shall be liable to the claims of his creditors in the same manner as other personal property which cannot be reached by execution.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 195, 195½, 197; Dec. Dig. § 151.*]

3. CREDITORS' SUITS (§ 16*)—CONDITIONS PRECEDENT—EXECUTION AND RETURN.
   Under Code Civ. Proc. § 1871, providing that, when an execution against the property of a judgment debtor has been returned wholly or partly unsatisfied, the judgment creditor may maintain an action to compel the discovery of any property belonging to the judgment debtor or due him or held in trust for him and to procure satisfaction of the plaintiff's demands, and section 1872 providing that, to entitle the judgment creditor to maintain such action, the execution must have been issued to the sher-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

iff of the county where the judgment debtor resides, if a resident of the state, or, if not a resident, to the sheriff of the county where he has an office for the regular transaction of business in person, or, if he has no such office, to the sheriff of the county where the judgment roll is filed, unless issued out of a court other than that in which the judgment was rendered, in which case it must have been issued to the sheriff of the county where a transcript of the judgment is filed, such an action could not be maintained where the judgment debtor was a nonresident and had no office in the state, and the judgment was recovered in the Supreme Court in the county of Kings, in which county the judgment roll was filed, but the only execution was issued to the sheriff of the county of New York.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 45, 73–87; Dec. Dig. § 16.*]

4. TRUSTS (§ 151*)—RIGHTS AND REMEDIES OF CREDITORS OF CESTUI QUE TRUST.

Under Real Property Law (Consol. Laws 1909, c. 50) § 98, providing that where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus thereof beyond the sum necessary for the education and support of the beneficiary shall be liable to the claims of his creditors in the same manner as other personal property, which cannot be reached by execution, where the beneficiary's wife had procured a separation with an award of alimony, she was entitled to support out of such income before any part could be applied on the judgment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 195, 195½, 197; Dec. Dig. § 151.*]

5. DIVORCE (§ 255*)—ALIMONY—ORDERS—COLLATERAL ATTACK.

In a suit to apply the surplus income from a trust beyond that necessary for the beneficiary's support to a judgment against him, orders in the beneficiary's wife's action for a separation allowing alimony were conclusive that the amount allowed was a reasonable sum for her support and could not be ignored or collaterally attacked, especially where the wife was not a party to the action.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 722–724; Dec. Dig. § 255.*]

6. COURTS (§ 201*)—WILLS (§ 705*)—JUDICIAL CONSTRUCTION—COLLATERAL ATTACK.

A surrogate's court had ample jurisdiction in passing upon the account of a testamentary trustee to construe the will, and its decree construing it could not be attacked in a collateral action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 86, 87; Dec. Dig. § 201;* Wills, Cent. Dig. § 1682; Dec. Dig. § 705.*]

7. WILLS (§ 686*)—CONSTRUCTION—DURATION.

A testatrix bequeathed in trust an amount sufficient to produce a clear annual income of $9,000, to be paid to a son in equal quarterly payments, upon the condition, however, that he must produce evidence satisfactory to the trustees that during the preceding quarter he had applied to the benefit, support, maintenance, and education of his two children, or the issue or survivor of them, the sum of $1,250, in default of which evidence the income was to be paid to other parties. *Held*, that the provision for the children's benefit did not cease upon their attaining their majority but continued during the duration of the trust, since the intent of the testatrix, and not the duty of the beneficiary in morals or law to support his children, was the test.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1631–1637; Dec. Dig. § 686.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. Trusts (§ 151*)—Rights and Remedies of Creditors of Cestui Que Trust.

Under Real Property Law (Consol. Laws 1909, c. 50) § 98, providing that where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of the rents and profits beyond a sum necessary for the education and support of the beneficiary shall be liable to the claims of his creditors in the same manner as other personal property which cannot be reached by execution, the beneficiary of the trust is entitled to receive an income sufficient to support him in the manner in which he has been brought up, and to which he has been accustomed to live, and in which the creator of the trust evidently intended that he should live.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 195, 195½, 197; Dec. Dig. § 151.*]

9. Trusts (§ 151*)—Rights and Remedies of Creditors of Cestui Que Trust.

Under such section, the burden is on the judgment creditor to show what income is reasonably necessary for the beneficiary's proper support, the presumption being that the creator of a spendthrift trust calculated the amount that would be necessary; and hence, where there was no evidence on this point, it was error for the court arbitrarily to fix an amount as sufficient for the beneficiary's support.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 195, 195½, 197; Dec. Dig. § 151.*]

Appeals from Special Term, New York County.

Two actions by Jeanette Demuth against George Kemp, impleaded, etc., and against George Kemp and others, as trustees, and others, respectively. From the judgments (70 Misc. Rep. 516, 140 N. Y. Supp. 152), defendants appeal, and plaintiff files cross-appeal. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

J. S. McDonogh, of New York City, for plaintiff.
Joseph Brewster, of New York City, for defendant Kemp.
John Larkin, of New York City, for defendant trustees.

SCOTT, J. The two judgments brought up by these appeals relate to the disposition of the income derived by the defendant George Kemp from two separate trusts created by the wills of his father and mother. The two causes were tried together and were considered together by the justice who rendered the judgments appealed from. It will be most convenient also to consider the two appeals together.

The plaintiff holds a judgment against defendant George Kemp for a considerable sum of money. It was recovered on May 14, 1902, and, save for some insignificant payments, it remains wholly unpaid and unsatisfied. The defendant George Kemp is in receipt of income from two sources, under separate trusts created by his parents. George Kemp, the elder, died leaving a will which was admitted to probate on December 27, 1893. By this will and a codicil thereto he gave to his trustees a fund of $150,000 to be held by them during the lifetime of George Kemp, the younger, the present defendant. Out of the income from this trust fund the trustees were directed to pay to

George Kemp, the younger, the annual income of $6,000, with the proviso that, if said fund. should fail to produce said sum in any year, the deficit should be made up out of other revenues of the estate.   By a clause in the will, to which clause the codicil was also made subject, it was provided that the trustees need not pay any part of the income directly into the hands of said George Kemp, the younger, "if and in so far as they shall consider it injudicious to do so, but that in the application of such net income to the use of said George Kemp, Jr., they shall be governed by their own judgment and discretion and shall apply the same to his use in such way and manner as they shall consider most useful and beneficial to him."

The testator gave to his wife, Juliet A. Kemp, two-fifths of his residuary estate for her life, with a power of appointment by will.   Juliet A. Kemp died leaving a will which was admitted to probate on January 7, 1897.   In the attempted exercise of her power of appointment she gave to her executors, as trustees, such a proportion of the estate devised for her benefit by her husband as should produce a clear annual income of $9,000 to be paid to George Kemp, the younger, in equal quarter yearly payments, upon the somewhat unusual condition, however, that, before any quarter yearly payment was made to him, he must produce to the trustees evidence satisfactory to them that he (the said George Kemp, the younger) had, "during the three months immediately preceding the expiration of said quarter, applied to the use, benefit, support, maintenance, and education of his two children, Chouteau Kemp and Gladys Kemp," or the issue or survivor of them, the sum of $1,250.   In default of the production of such satisfactory evidence, the trustees were directed to pay the whole income of that quarter "to such of the children of my said husband, George Kemp (other than my said son George Kemp), as shall be living," and to the living issue of any deceased child other than George Kemp.   At the death of George Kemp the trust in his favor is to terminate, and the trust estate is to be divided between the surviving children of the testatrix and the then living issue of any deceased child other than said George Kemp, the younger.   A question appears to have arisen as to the validity of this attempt on the part of Juliet A. Kemp to exercise the power of appointment given to her by the will of her husband, wherefore, to set any such question at rest, Marion Morgan Kemp, Juliet Augusta Tyng, and Arthur Tryon Kemp, all of the children of George Kemp, the elder, and Juliet A. Kemp, except George Kemp, the younger, executed an agreement with the trustees under the will of George Kemp, the elder, and the trustees under the will of· Juliet A. Kemp whereby they acknowledged and declared that the gift, devise, bequest, and appointment by the will of the said Juliet A. Kemp, deceased, for the benefit of George Kemp, the younger, are in all respects valid and effectual.

In the year 1900 an action was commenced in the Supreme Court by the executors and trustees under the will of George Kemp, the elder, against the trustees under the will of Juliet A. Kemp and all persons interested under the wills for a construction of the will of said George Kemp, the elder, a settlement of the accounts of the

plaintiffs, a determination of the rights of the several parties, and an adjudication as to the validity of the attempted execution by Juliet A. Kemp of the power conferred upon her by the will of her husband. The final judgment in that action, entered on August 19, 1903, affirmed the validity of the attempted exercise of the power of disposition given her by her husband's will and of the agreement above recited, executed by the children of George and Juliet A. Kemp, other than the present defendant George Kemp. It was further held that said George Kemp, the younger, had no estate or interest in the lands, nor in the real or personal estate of the said George Kemp, deceased, other than as beneficiary of the trust created by the will of said George Kemp, deceased, to provide an annual income of $6,000 for his benefit during his life and as beneficiary of the trust created by the will of Juliet Augusta Kemp, deceased, to provide an annual net income of $9,000 for his benefit during his life.

George Kemp, the younger, failed to produce to the trustees under the will of Juliet A. Kemp, deceased, satisfactory evidence that he had expended during any quarter for the use and benefit, support, maintenance, and education of his children the sum which his mother, by her will, had directed that he should expend as a condition of receiving the quarterly installment of income. The trustees thereupon, and on December 18, 1903, began a proceeding in the Surrogate's Court of the county of New York for a settlement of their accounts, and incidentally for a construction of the will of Juliet A. Kemp, deceased, and for instructions. To this proceeding all persons interested in the estates of George Kemp, the elder, and Juliet A. Kemp were made parties. On December 7, 1905, a decree in said proceeding was made in said Surrogate's Court, wherein, among other things, it was adjudged as follows:

"Ordered, adjudged, and decreed, by way of construction of the said trust of $375,000, as aforesaid, that during the life of George Kemp as to all quarter yearly payments of $2,250 hereafter payable from said trust fund; beginning with the one payable November 1, 1905, the accountants, as trustees, on production by any one in behalf of said Chouteau and Gladys Kemp, the survivor and their issue, of evidence satisfactory to such trustees showing that during three months immediately preceding the expiration of such quarter there has been applied to the use and benefit, support, maintenance, and education of Chouteau and Gladys Kemp, or, if either of them shall have died, to the use, benefit, support, maintenance, and education of the survivor of them and the issue of the one of them who shall have died, or, if both of such children shall have died, to the use and benefit, support, maintenance, and education of the issue of such children, or, if one of them shall have died without leaving issue who shall at the time being be living, of the issue of the other of them of the sum of $1,250, or that it has been properly deposited in the bank account kept by said general guardian of said infants, and each of them, or that it has been invested in securities authorized by law by the said general guardian for said children, and each of them, or after they or each of them became of age it has been satisfactorily shown that each has used his or her share for the above-mentioned purposes, the said trustees shall pay the sum of $1,250 for each quarter directly to the general guardian of said infants for the purposes aforesaid, or, if the said children shall then be of age, to said Chouteau and Gladys Kemp or the issue of either or both of them for the same purposes. The balance of each said quarterly payment, to wit, $1,000, shall be paid by said trustees directly to George Kemp; and such payments of quarterly yearly installments in the manner herein directed

shall be deemed and taken to be a full compliance with the intent and purpose of the testator as expressed in her will."

Lila Kemp, the wife of George Kemp, the younger, began an action for a separation against him in the Supreme Court, and on June 10, 1903, an order was made allowing her temporary alimony of $2,500 a year and directing that it be paid to her by the trustees under the will of George Kemp, the elder, out of the income provided by that will to be paid to George Kemp, the younger. This alimony was increased to $3,000 per annum by an order dated June 10, 1903. These orders are still in force.

In September 1910, the plaintiff herein issued an execution to the sheriff of Kings county, under the provisions of section 1391, Code of Civil Procedure, directing said sheriff to collect from the trustees under the will of George Kemp, the elder, and the trustees under the will of Juliet A. Kemp, 10 per cent. of the income by said wills directed to be paid to George Kemp the younger. The said trustees have accordingly withheld and now hold said 10 per cent. The financial situation of George Kemp, the younger, defendant herein, at the time of the commencement of this action may therefore be summarized as follows: He owed the plaintiff a large sum upon an unsatisfied judgment. He was entitled under the will of his father to an annual income of $6,000, of which $3,000 was required by the order of the court to be paid directly to his wife. He was entitled under the will of his mother to an annual income of $9,000, of which $5,000 was required to be paid or expended for the benefit of his two children. An execution was outstanding under which $1,500 per annum, being 10 per cent. of his income from all sources, was impounded under section 1391, Code of Civil Procedure to be applied to the payment of plaintiff's judgment. This left to the said George Kemp, the younger, from both trust funds a net income of $5,500, being $2,400 from the trust fund created by the will of George Kemp, the elder, and $3,100 from the trust fund created by the will of Juliet A. Kemp.

The court at Special Term, by the orders appealed from, has held: (1) That the alimony of $3,000 per annum shall continue to be paid to Lila Kemp, the wife of said George Kemp, out of the income derived from the trust fund created by the will of George Kemp, the elder. (2) That it was the intention and true construction of the will of Juliet A. Kemp that the provision therein made for the use and benefit, support, maintenance, and education of Chouteau Kemp and Gladys Kemp, children of George Kemp, the younger, should continue only during the minority of said children, and, since they have both attained full age, all payments to them or for their benefit should cease. (3) That all the income derived from both trust funds, less $3,000 per annum to be paid to the wife of said George Kemp, the younger, and $3,000 per annum to be paid to said George Kemp for his own support and maintenance, shall be paid to plaintiff on account of her judgment. (4) That the execution against 10 per cent. of the income of said George Kemp, the younger, be withdrawn and the proceedings to collect said 10 per cent. by execution be discontinued.

The plaintiff by her appeal calls in question the continued payment

of alimony to the wife of George Kemp, and also the amount ($3,000 per annum) allowed to said George Kemp for his separate maintenance. She also objects to the requirement that the proceedings under section 1391, Code of Civil Procedure, be discontinued. The defendant George Kemp and the defendants trustees appeal generally from both judgments.

[1-3] We are met at the threshold of the case with an objection by the defendant George Kemp which goes to the right of the plaintiff to maintain the action. It is said that the complaint is insufficient to sustain the judgment because it is not alleged, nor was it proven, that an execution upon plaintiff's judgment had been issued and returned unsatisfied in the manner required by sections 1871 and 1872 of the Code of Civil Procedure. This objection was taken at Special Term both at the opening of the case and at its close, and decision was reserved. No express decision was made unless the action of the court in rendering judgment in favor of the plaintiff may be considered as in effect overruling the objection. The point is a serious one. The actions are brought under section 98 of the Real Property Law (Laws 1909, c. 52; Consol. Laws 1909, c. 50), which provides:

"Where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the beneficiary, shall be liable to the claims of his creditors in the same manner as other personal property, which cannot be reached by execution."

It is well settled that this provision also applies to income derived from trusts of personal property. It was questioned at one time whether or not the Code provisions relating to the issue and return of an execution against the property of the judgment debtor, as a prerequisite of a creditor's action, applied to an action brought to reach surplus income under this section, but it was finally determined that they do, and this is now accepted as the settled law. Dittmar v. Gould, 60 App. Div. 94, 69 N. Y. Supp. 708; Sherman v. Tucker, 60 App. Div. 127, 69 N. Y. Supp. 850; Butler v. Baudouine, 84 App. Div. 215, 82 N. Y. Supp. 773, affirmed 177 N. Y. 530, 69 N. E. 1121. In the allegations of the complaint, admitted by the answer of the defendant Kemp, are that said Kemp is a resident of Paris, France; that plaintiff's judgment was recovered in the Supreme Court in the county of Kings, and that the judgment roll was filed in the office of the clerk of Kings county; that a transcript of said judgment was filed and said judgment docketed in the office of the clerk of the county of New York; that an execution on said judgment was issued to the sheriff of the county of New York and returned unsatisfied. No evidence to the contrary of these facts appears in the record, nor does it appear that said Kemp has or had an office for the regular transaction of business in the county of New York. These allegations do not show that the prerequisites prescribed by statute for the maintenance of an action like the present have been complied with. Section 1872, Code of Civil Procedure, provides as follows:

"To entitle the judgment creditor to maintain an action as prescribed in the last section, the execution must have been issued as follows: (1) If, at the time of the commencement of the action, the judgment debtor is a resi-

dent of the state, to the sheriff of the county where he resides. (2) If he is not then a resident of the state, to the sheriff of the county where he has an office, for the regular transaction of business in person; or if he has no such office within the state, to the sheriff of the county where the judgment roll is filed, unless the execution was issued out of a court, other than the court in which the judgment was rendered; in which case, it must have been issued to the sheriff of the county where a transcript of the judgment is filed."

It seems to be plain that the plaintiff failed to lay the necessary foundation for this action. To do so, under the circumstances of the case, the execution should have been issued to the sheriff of Kings county, for it was in that county that the judgment roll was filed. The objection of the defendant Kemp is therefore fatal to the maintenance of the action.

[4, 5] But, even if this objection were not fatal, we should still be unable to affirm the judgment appealed from. It is clear that the Special Term was correct in affirming the right of George Kemp's wife to be paid the alimony awarded to her by the orders of the court. Certainly she was entitled, as his wife, to support out of his income. Wetmore v. Wetmore, 149 N. Y. 520, 44 N. E. 169, 33 L. R. A. 708, 52 Am. St. Rep. 752. The orders fixing the amount of alimony are, while unreversed, conclusive adjudications that the sum of $3,000 per annum is a reasonable sum to be allowed the wife for her support, and they certainly cannot be ignored or set aside in a collateral proceeding, especially in the absence of the wife who is not a party to the action.

[6, 7] The court erred in ignoring the surrogate's decree construing the will of Juliet A. Kemp and in holding that the provision made in that will for the benefit of the two children of George Kemp was intended to provide for them only during infancy. In the first place the Surrogate's Court had ample jurisdiction, as incidental upon its authority to pass upon the trustees' accounts, to construe the will. (Garlock v. Vandervoort, 128 N. Y. 374, 28 N. E. 599), and the decree construing it was a valid exercise of that authority. It is not open to collateral attack, especially in the absence of the children affected. In the second place, we find no support in the will of Juliet A. Kemp for the assumption that she intended that the children of George Kemp should benefit from the trust estate only during their minority. The question is not whether George Kemp "is required either in morals or law to support adult children who have married and who do not live with him," to quote from the opinion of the learned justice at Special Term, but what provision did Juliet A. Kemp, the creator of the trust, intend as to the benefit her grandchildren should derive from the trust estate? The provision for the payment of $5,000 a year to the two children of George Kemp is not in terms limited to the support and education during infancy, but is made for their use and benefit, support, maintenance, and education without limitation of time except the duration of the trust which will terminate at the death of George Kemp. While the necessity for their education may or may not have terminated with their minority, the necessity for their support and maintenance did not end then, nor the desirability of having a fixed income appropriated to their use and benefit. A sig-

nificant indication that Juliet A. Kemp did not intend that the provi-·
sion for the benefit of her grandchildren should continue only during
their minority is to be found in the fact that the provision is in terms
extended to the issue of either of said grandchildren who might die.

[8, 9] We are also of the opinion that the court erred in fixing ar-
bitrarily, without evidence, upon the sum of $3,000 per annum as a
reasonable amount to be paid to George Kemp for his support and
maintenance.  There are two rules which seem to be well settled in
cases like the present.  The first is that the beneficiary of the trust
is entitled to receive an income sufficient to support him in the man-
ner in which he has been brought up, and to which he has been accus-
tomed to live, and in the manner in which the creator of the trust
evidently intended that he should live.  Genet v. Beekman, 45 Barb.
382; Stow v. Chapin, 51 Hun, 640, 4 N. Y. Supp. 496; Moulton v.
De Ma Carty, 6 Rob. 533.  The case of Tolles v. Wood, 99 N. Y. 616,
1 N. E. 251, more fully reported in 16 Abb. N. C. 1, upon which plain-
tiff much relies, is not to the contrary, because in that case it appeared
that the amount necessary and reasonable for the judgment debtor's
support had been agreed upon, and the agreement acted upon for
some years before the commencement of the creditor's action, and
the court merely adopted the sum thus agreed upon.  The second rule
is that the burden rests upon the plaintiff to show what is reasonably
necessary for the proper support of the judgment debtor in accordance
with the foregoing rule.  The presumption is that the creator of a
spendthrift trust, such as are both of these before the court, calculated
the amount that would be necessary to support the spendthrift in the
manner and station that such creator desired his beneficiary to be
supported in.  If his provision was larger than afterwards proved to
be necessary, it is for the judgment creditor to prove that fact.  Kil-
roy v. Wood, 42 Hun, 636; Card v. Meincke, 72 Hun, 299, 25 N. Y.
Supp. 1119; Bunnell v. Gardner, 4 App. Div. 321, 38 N. Y. Supp. 569;
Stow v. Chapin, supra.  The plaintiff made no attempt to sustain this
burden of proof beyond offering some obviously insufficient evidence,
which was properly rejected.  In fact, neither party produced evi-
dence upon the subject, and the conclusion at which the court arrived
as to the proper amount to be allowed is wholly without any evidence
to support it.  Such a finding cannot be sustained.  Under all the cir-
cumstances, we certainly cannot say that the net clear income left to
the defendant after the payments required to be made to his wife
and to or for the benefit of his children is so large as to be unreason-
able, although proper evidence might show that it is.

We are not called upon to determine upon what sum the 10 per
cent. execution operates.  That can more properly be determined in
an action brought to enforce the execution.  It follows, from the in-
sufficient allegation and proof as to the issue and return of an execu-
tion against the defendant Kemp's property, that the complaint must
be dismissed, with costs in each action, in all courts, to the defendant
trustees.  All concur.