[Civ. No. 8752.   First Appellate District, Division One.—January 28, 1933.]

EDWARD   RUDOLPH   KELLY,   Appellant,   v.   MARY BOWEN KELLY, Respondent.

George D. Shreve and Edward F. Boyle for Appellant.

John H. McCorkle and Joe L. Shell for Respondent.

KNIGHT, J.—Plaintiff and defendant are husband and wife, and the parents of two minor children. Differences arose between them, and although they continued to reside in the same home they had severed the marital relationship. On March 30, 1928, they entered into a written property settlement agreement, and about two years later, to wit, on December 28, 1929, plaintiff brought this action to have the agreement annulled. The judgment was that he take nothing by his action, and he has appealed.

It appears that subsequent to their marriage the parties acquired several pieces of real estate, which, shortly prior to and as part of the property settlement, they divided and for which they exchanged deeds. It also appears that plaintiff's mother, who at the time of the making of said agreement, was well advanced in years and ill, was beneficiary of one or more trust estates then being administered in and pursuant to the laws of the state of Pennsylvania, and that in the event of her death the interests she possessed in said trust estates would descend to plaintiff. It was in the light of these present and future conditions that said agreement

was drawn and executed. It declared first that its purpose was to settle forever the property rights of the parties; also that whatever property then stood in the name of either party was the separate property of such party, unless otherwise stated. The agreement then proceeded as follows: "Second, the party of the first part (plaintiff) hereby grants and assigns to the party of the second part a one-half interest in any and all property of any and every kind to which first party may now be entitled, or of which he may hereafter receive or become entitled to, by gift, inheritance, or bequest, or as beneficiary of any trust, of which one-half, one-third of such half shall belong to the party of the second part, in fee and in perpetuity, and to her heirs and assigns, forever, but the other two-thirds of such one-half interest, the party of the second part takes and shall take in trust, holding for her own use only for herself the rents, issues and profits for her life only, the remainder to be held by her in trust for Robert Bowen Kelly and Charles Edward Kelly, children of the parties hereto, share and share alike, and to their heirs and assigns forever. Third, the other one-half of any and all such gifts, bequests and notices now held or hereafter received by the first party, he shall hold and take as his own, but out of the same shall pay all debts and encumbrances against the same, so that the interests herein above given to the party of the second part shall be free from such debts and encumbrances. Fourth, in case there should hereafter ever be a decree of divorce granted to either party hereto from the other, then the provisions with respect to the division of property herein above specified shall be deemed a property settlement and shall be incorporated in such decree of divorce in lieu of any and all other provisions for either division of property or alimony."

In October, 1928, some seven months after the agreement was executed, Mrs. Kelly, the defendant, instituted divorce proceedings in which she pleaded the making of said property settlement, and asked, among the other relief prayed, that said agreement, a copy of which was attached to the complaint, be made part of the decree of divorce. Answering the complaint, Kelly denied certain allegations thereof and asked that said agreement be declared void upon the ground that it was "unconscionable" and obtained by his wife by means of threats to inform his mother of the

matrimonial differences existing between himself and wife, and of certain alleged misconduct on his part. Subsequently and before trial, Mrs. Kelly dismissed the suit for divorce, and approximately fourteen months later Kelly filed the present action to have the agreement annulled, which, as indicated, resulted in a judgment upholding the validity of the instrument.

The first point made on appeal is that the agreement is void for uncertainty, unintelligibility and indefiniteness "as to the time of performance and subject matter contained therein". The specific objections made in this regard are that the agreement contains no provision for the support of the children, that it cannot "be ascertained what appellant and respondent intended to convey and receive respectively, nor can it be determined when said agreement should become effective . . . or terminate or be performed, and further that said agreement shows on its face that there was no definite meeting of the minds of the parties thereto as to the subject matter . . . " We find no merit in any of said objections. Plaintiff cites no authority to sustain his view that the absence of a provision for the support of the children destroys the validity of a property settlement agreement between husband and wife; and even if such were the law the agreement in question conforms to that requirement because as will be noted, under its provisions, a large share of said trust estate which will eventually descend to plaintiff was assigned to the children. Furthermore it is held generally, in divorce cases, that such agreements are not binding upon the trial court either as to the matter of the support of the children (*Lewis* v. *Lewis*, 174 Cal. 336 [163 Pac. 42]), or with respect to the parties themselves (*Chadwick* v. *Chadwick*, 95 Cal. App. 690 [273 Pac. 86]) ; and that if in the rendition of its decree the court believes the agreement to be unjust or inequitable it may reject it in whole or in part. (*Moog* v. *Moog*, 203 Cal. 406 [264 Pac. 490].) The remaining objections to the agreement based on the charges of uncertainty and indefiniteness are answered by the terms of the agreement. As stated, the evidence shows that the subject matter of the settlement was plaintiff's expectancy in trust estates then being administered, and necessarily it was impossible at the time the agreement was drawn and executed to state with any degree

of certainty when plaintiff would succeed to his mother's interests in said estates, or what amount or character of property he would receive therefrom. The agreement definitely fixed the proportions assigned to the respective parties, which was legally sufficient under the existing circumstances. Plaintiff has cited numerous authorities dealing generally with the element of uncertainty in contracts and agreements, but none involves a property settlement agreement such as we have here, nor do they even remotely touch the point at issue here. It is unnecessary, therefore, to devote any discussion to them.

█ Plaintiff's second point is that the agreement was void because, as he asserts, he "entered into same under a mistaken knowledge of law, of his rights and the legal effect of the document". In substance it was so alleged in his complaint and denied in the answer; and after taking evidence upon the issue the trial court found adversely to plaintiff's claim. As will be observed, the point now urged is in effect an attack upon the sufficiency of the evidence to support such finding. However, the appeal was taken pursuant to the alternative method provided by section 953a of the Code of Civil Procedure, and plaintiff has utterly failed to print in his brief as required by section 953c of said code any evidence whatever relating to said issue, nor has he called attention to any part of it by transcript reference. And it has been repeatedly held that under such circumstances the reviewing courts are not called upon to look to the typewritten transcript to determine whether ground exists for reversal. (*Barker Bros.* v. *Joos,* 36 Cal. App. 311 [171 Pac. 1085]; *Dahlberg* v. *Dahlberg,* 202 Cal. 295 [260 Pac. 290]; 2 Cal. Jur. 650, 651.) Notwithstanding plaintiff's failure to comply with the law and rules of court in this respect, we have examined the record and find ample evidence to support the trial court's finding, it being shown by the evidence that the agreement was drawn by a competent lawyer, who, before plaintiff signed the same, fully explained to him the nature and legal effect thereof.

█ Lastly, plaintiff contends that "there is no guarantee or assurance that the supposed object of the parties in executing this agreement, to-wit, the provision for the care and maintenance of the minor children would be carried out or accomplished", the argument made in this behalf being that

he has no assurance that defendant will devote any of the income or principal received by her under the agreement to the support of the children, thus leaving him "wholly responsible for their support and maintenance", or leaving the children to "the mercy of any eventualities which might arise". Obviously there is no legal point involved in the above contention. Suffice it to say plaintiff had full opportunity at the time the agreement was drawn and before it was executed to safeguard any possible fears he may have entertained in this behalf, and the belief now that he may not have done so does not constitute legal ground for nullifying the agreement. ■ Nor are we here concerned with the question of whether the agreement will be recognized and given effect by the courts of the state administering said trusts. It has been repeatedly held by the courts of this state that an agreement of the kind here presented may be entered into between husband and wife (*Chadwick v. Chadwick, supra,* and cases cited therein), and since there is no merit in any of the technical objections made by plaintiff against its validity the judgment of the trial court sustaining the agreement is affirmed.

Tyler, P. J., and Cashin, J., concurred.