[Civ. No. 8970. First Appellate District, Division One.—July 3, 1935.]

PEARL S. CANFIELD, Appellant, v. SECURITY FIRST
 NATIONAL BANK OF LOS ANGELES (a Corpora-
 tion) et al., Respondents.

J. M. Danziger, Charles A. Buckley and R. M. J. Armstrong for Appellant.

Lawler & Degnan and Henry Brown for Respondents.

Robert R. Moody, as *Amicus Curiae* on Behalf of Respondents.

KNIGHT, J.—Plaintiff was granted a divorce from the defendant Charles O. Canfield, and a stipulated decree was entered in the action whereby the court awarded to plaintiff, and Canfield agreed to pay to her, among other sums, one-third of the net income received by him from a spendthrift trust created under the will of his father, until the full amount of $20,000 was paid; also the sum of $1,000 monthly for plaintiff's maintenance and support until Canfield's death or plaintiff's remarriage. Said stipulated decree further provided that upon Canfield's failure to make such payments, a receiver should be appointed to receive from the trustee the one-third of said income which otherwise would be paid to Canfield, and to apply the same in satisfaction of the payments called for by said decree. Canfield failed to make said payments as agreed by him and as directed by said decree, and thereupon plaintiff brought this action against him and the trustee, asking for the appointment of a receiver and that the surplus income from said trust over and above the amount necessary for Canfield's maintenance and support, which otherwise the trustee would pay to Canfield, be paid to the receiver and applied by him as provided in said decree. In this connection the complaint alleged that under the terms of said decree there was due plaintiff $23,833.34, plus interest; that the trust fund ''has securities and property'' exceeding one million dollars in value, which produces an annual income of more than $60,000; and that although Canfield had been paid therefrom more than $50,000 yearly, he failed and refused to pay plaintiff the sums she was entitled to under

said stipulated decree. Demurrers to the complaint were interposed by Canfield and the trustee, and the same were sustained without leave to amend. Judgment of dismissal followed; and plaintiff has taken this appeal from said judgment.

The will, a copy of which was attached to the complaint and made part thereof, was executed on August 29, 1912, and the decree of distribution was entered March 30, 1914. The property disposed of by the will was valued at several million dollars. After providing numerous legacies to friends, servants, institutions and collateral relations, and bequeathing one million dollars each to his four daughters, the testator bequeathed "one million dollars ($1,000,000.00) worth of securities or cash, less one hundred thousand dollars ($100,000.00), in either cash or securities as above provided . . . , to the Security Trust and Savings Bank . . . for the benefit of my son Charles O. Canfield and his [two] children [by a former marriage], upon and for the trusts, intents and purposes, and with and subject to the powers and provisions hereinafter mentioned and declared of and concerning the part or share of my estate to the benefit of which my son Charles O. Canfield and his children are entitled by virtue of the provisions of this my will". The testator then proceeded by the fifteenth clause of his will to give his reasons for creating a spendthrift trust, and to define the duties and powers of the trustee. In this respect he declared that the past conduct and life of his son had been "one of waste, dissipation and extravagance; and that his present associations, conduct and mode of living indicate no existing purpose of reform on his part"; that he had squandered "in the neighborhood of more than one hundred thousand dollars ($100,000.00) . . . through his incompetency in business matters and his dissipation"; and "that the probability of his reforming in the future . . . amounts to no more than a father's hope". Therefore, in establishing the spendthrift trust he directed that the trustee, during the lifetime of his son, "collect, recover and receive the rents, issues, dividends, profits and income of said share of my estate, investing and reinvesting the principal thereof, when necessary or advisable . . . in safe and secure investments, suitable for the investment of trust funds . . . ", and after paying all taxes and

lawful charges and expenses of the trust, (a) pay in monthly instalments $1200 per annum "only to and into the proper hands of my son Charles O. Canfield, and not by way of anticipation, nor to any assignees of my said son, nor to or upon any order which my said son shall give, whether such assignment or order be the voluntary contractual act of my son or be made pursuant to or by virtue of any legal process in attachment, execution, bankruptcy or otherwise"; (b) that in addition to the payment of said annual sum the trustee shall apply as said trustee deems advisable and through such agencies as it may select, whatever sums are necessary for the support, maintenance and education of Orville and Laura Elaine Canfield, children of Charles O. Canfield, in a manner suitable to their station in life, during their respective lives. The will then provides: "(c) If, in the judgment of my said trustee . . . my said son shall hereafter prove himself worthy of being entrusted with the expenditure of a larger annual income or allowance than that above given him, my said trustee may, in such event, at any time, and in such proportions and at such time as to payments as it shall deem advisable in the discretion of its said officers, *increase the said allowance and pay over such increase to my said son up to the full limit of the net income of the said trust estate and any unexpended income which may have accumulated in the hands of the trustee, notwithstanding the provision above made as to payments out of the income for the maintenance and education of my said grandchildren, Orville and Laura Elaine.* (d) It is my purpose and will, by the foregoing provisions as to the application of the income of said trust estate, to commit to my said trustee absolute discretion as to, and full power of control over, the application of all of the net income of said trust estate beyond the said sum of twelve hundred dollars ($1,200.00) per annum." (Italics ours.) The next paragraph of the will is composed of comprehensive provisions to the effect that the said Charles O. Canfield shall have no interest, estate or ownership in the principal or income of said trust, and that the same shall be immune from his debts, obligations, assignments and from all court process, and that "the whole of the income" shall go to and be applied by said trustee solely for the benefit of said Charles O. Canfield and his said two children, free from any

obligations of the said Charles O. Canfield. And finally, the will declares that upon and after the death of the said Charles O. Canfield, the trust shall continue for the benefit of said two children during their respective lives, and that upon the death of either or both said trust shall be dissolved and the principal thereof distributed in the manner and to the persons therein designated.

As pointed out in *Seymour* v. *McAvoy*, 121 Cal. 438 [53 Pac. 946, 41 L. R. A. 544], under the common-law rule followed by the courts of England and some of the American states, spendthrift trusts are held to be against conscience and sound public policy and therefore invalid as against the rights of the creditors of the beneficiary, upon the ground that a debtor should not be permitted to have the use and enjoyment of wealth to the exclusion of the rights of his creditors. (*Brandon* v. *Robinson*, 18 Ves. 429.) But in most states of the Union the right to create a spendthrift trust within certain limitations has been upheld by judicial decision or authorized by legislative enactment or both, upon the theory that a donor has the right to give his property to another upon any conditions he sees fit to impose, and that, inasmuch as such a gift takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment, they cannot complain that the donor has provided that the property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors. (*McColgan* v. *Walter Magee, Inc.,* 172 Cal. 182 [155 Pac. 995, Ann. Cas. 1917D, 1050].) California is one of the majority states adhering to this latter doctrine. The validity of such trusts created prior to the adoption of the codes in 1872 was sustained generally by judicial decision (*Cutter* v. *Hardy,* 48 Cal. 568; *Seymour* v. *McAvoy, supra*) ; and at the time of the adoption of the codes, the legislature, by the enactment of section 867 of the Civil Code, expressly authorized the creation of such trusts ''for the receipt of the rents and profits of *real property* . . . '' (Italics ours.) But at the same time it also enacted section 859 of the same code, which the courts have held applies to trusts created under the authority of section 867 (*McColgan* v. *Walter Magee, Inc., supra; Magner* v. *Crooks,* 139 Cal. 640 [73 Pac. 585]) ; and by this section

the strict rule granting absolute immunity to a beneficiary from the demands of his creditors was greatly modified and relaxed. Appellant herein bases her right to maintain this action primarily upon the provisions of that section. It reads as follows: ''Where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created, is liable to the claims of the creditors of such person, in the same manner as personal property which cannot be reached by execution.''

Respondents contend, however, that it appears from the will in the present case that the trust here involved was created to receive the income from personal property and not the rents and profits of real property, and that consequently appellant's case does not fall within the purview of said code section. We find no merit in this contention. As will be observed from the opening clause of said code section, its application does not seem to depend entirely upon the character of the property constituting the trust fund at the time the trust was created or becomes operative, but rather upon the question of whether at the time of the creation thereof the donor intended or contemplated that some time in the future during the life of the trust the annuity to be paid pursuant thereto would consist in whole or in part of the rents and profits of real property. In the present case, it is true, the testator directed that upon his death ''one million dollars worth of securities or cash'' be set aside by his executors as the foundation of the trust; but by the succeeding provisions of his will he went on to vest full power in the trustee to invest and reinvest the principal of the trust, without qualification as to the nature of the property to be thus acquired, ''in safe and secure investments, suitable for the investment of trust funds''. It would appear, therefore, that at the time he gave such directions he contemplated the acquisition by the trustees of real as well as personal property as part of the trust fund. And turning to the complaint, we find it is alleged therein, in broad terms, that (at the time of the commencement of the action) the trustee ''has securities and *property*'' valued in excess of one million dollars (italics

ours), which allegation, when read in connection with the above provisions of the will, was and is legally sufficient in our opinion to bring the case as appellant contends within the purview of the opening clause of said section 859, for the reason that the word ''property'' is a generic term which includes anything subject to ownership (*Los Angeles Pac. Co.* v. *Hubbard,* 17 Cal. App. 646 [121 Pac. 306], citing sec. 654, Civ. Code), and the provisions of section 14 of said code expressly declare that the signification to be attached to the use thereof shall include, unless otherwise apparent from the context, ''property real and personal''.

Appellant further contends that even assuming the trust herein was created to receive the income from personal property alone, or from part personal and part real property, she may nevertheless maintain the action under the doctrine established and followed by the courts of the state of New York. This contention is based largely upon the fact that at the time of the adoption of our codes in 1872, our section 859 of the Civil Code was taken from a New York statute (1 N. Y. Rev. Stats. 729, sec. 57), enacted in 1829 (*Magner* v. *Crooks, supra*); and that prior to the time of so adopting said code section the New York courts had held that the provisions of their statute applied to trusts of real and personal property alike (*Hallett* v. *Thompson* [1836], 5 Paige (N. Y.), 583; *Rider* v. *Mason,* 4 Sandf. Ch. (N. Y.) 351; *Sillick* v. *Mason* [1847], 2 Barb. Ch. (N. Y.) 79); and such doctrine has since been followed consistently in that state. (*Williams* v. *Thorn* [1877], 70 N. Y. 270; *Cutting* v. *Cutting,* 86 N. Y. 522; *Wetmore* v. *Wetmore,* 149 N. Y. 520 [44 N. E. 169, 52 Am. St. Rep. 752, 33 L. R. A. 708]; *Demuth* v. *Kemp* [1913], 159 App. Div. 422 [144 N. Y. Supp. 690], affirmed [1916] 216 N. Y. 757 [111 N. E. 1086]; *Jenks* v. *Title Guarantee & Trust Co.* [1915], 170 App. Div. 830 [156 N. Y. Supp. 478].) ▮ Up to the present time the question of whether the New York rule of construction should be followed in this state has not been expressly passed upon; but since the year 1854 the Supreme Court of this state has held by an unbroken line of decisions that when this state borrows and adopts a constitutional or statutory provision from another state, which has received judicial construction in that state, it does so in view of such judicial construction and

acquiesces in the correctness thereof. (*People* v. *Coleman*, 4 Cal. 46 [60 Am. Dec. 581]; *People* v. *Webb*, 38 Cal. 467; *Lux* v. *Haggin*, 69 Cal. 255 [4 Pac. 919, 10 Pac. 674].) ▮ It would seem, therefore, that by adopting the New York statute, this state, impliedly at least, adopted also the rule of construction placed thereon by the New York courts; and this would seem to be especially true in this particular instance because the case of *Sillick* v. *Mason, supra*, was one of the cases cited by the code commissioners in furtherance of the adoption of said section 859. (*Baranov* v. *Scudder*, 177 Cal. 458, 465 [170 Pac. 1122].)

▮ But aside from the foregoing rule of statutory construction, we are convinced, after analyzing the New York cases above cited, that the reasoning thereof is sound and that the doctrine established thereby is just and equitable, and inasmuch as its adoption here is not a matter for legislative enactment but one for judicial decision, it is our opinion that it should be followed in this state. In declaring such doctrine the New York court in *Hallett* v. *Thompson, supra*, said: "The provisions of the revised statutes on this subject, contained in the 57th and 63d sections of the article relative to uses and trusts, in the connection in which they are there found, are applicable to trusts to receive rents and profits of real estate, and to apply them to the use of the *cestui que trust* for life, or a shorter period. But courts of justice have always endeavored to preserve the analogy between estates or interests in land, or the income thereof, and similar interests in personal property. By analogy therefore to these rules as to the interest of a *cestui que trust* in the rents and profits of real estate, and the right of a judgment creditor to reach the surplus rents and profits of land beyond what is necessary for the support and maintenance of the debtor and his family, I feel myself bound to hold that a creditor's bill will reach a similar interest of the debtor in the surplus income of personal property, held by another for his use and benefit. . . ." In reaffirming the same doctrine in *Williams* v. *Thorn, supra*, the court said: "This provision (sec. 57, 1 Rev. Stats. 729) is very plain, and there can be no question that the surplus income of the real estate, if there be any such surplus, is liable to be reached in some form by the creditors of the beneficiary. Most of the cases on the subject expressly

hold this section equally applicable to a trust to receive and pay over the income of personal property, and no point is made on this appeal based upon any distinction between the two sources of the income in question. The right of a credi-tor to maintain an action of this description in cases of trusts of personal, as well as real estate has been recognized since an early period after the adoption of the Revised Statutes. . . . The right to maintain such an action as the present, was also sustained by V. C. Sandford in *Rider* v. *Mason* (4 Sandf. Ch. (N. Y.) 351), where section 57 of 1 R. S. 729, is applied indiscriminately to the income of real and personal property, and in *Sillick* v. *Mason* (2 Barb. Ch. (N. Y.) 79) . . . '' And again, in *Cutting* v. *Cutting, supra,* in adhering to the same doctrine, the court said: ''In support of this view, they say that the courts of justice have always endeavored to keep up an analogy between estates or interests in lands, and similar interests in personal property. Thus, the provision of the Revised Statutes, that where a trust is created to re-ceive the rents and profits of lands, the surplus in a certain case is liable in equity to the claims of creditors (1 R. S. 729, sec. 57), is by analogy equally applicable to a trust to receive and pay over the income of personal property, though the statute is silent as to the latter. (See *Williams* v. *Thorn,* 70 N. Y. 270, and citations there made.) There is certainly much force in the position that one body of law should not declare a different rule for two kinds of property, when there is nothing in the nature of either kind of property, or in the nature and effect of the rule that calls for it. Clearly in the nature of things there is no reason why a gift or bequest of personal property, with a power of disposition, should not be measured by the same rule as a grant or devise of real estate with the same power. Nor is there cited or suggested any express provision of statute law, that stands in the way of application of the rule of the Revised Statutes to both kinds of property.'' Moreover it may be stated that the favorable view we have taken of the New York doctrine on this con-troversial question is in harmony with the conclusions reached by legal authors who have given much thought and study to the subject. As said by Professor Costigan in one of the notes to his treatise on spendthrift trusts (found in ''Legal Essays'', published by the University of California in tribute

to Dean McMurray, page 110) : "It is true, of course, that logically California need not follow New York except in respect to trusts of real property . . . but naturally, like New York, it will treat alike spendthrift trusts of realty and spendthrift trusts of personal property." And as further pointed out by him, the decision of the Supreme Court of this state in *Estate of Edwards,* 217 Cal. 25 [17 Pac. (2d) 116], "seems to indicate a desire of the California courts to follow the New York rules as to spendthrift trusts".

The respondents argue that the New York doctrine is founded on another early statute of that state which provides that "limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property" (N. Y. Pers. Prop. Law, sec. 11; 5 Birdseye Cons. Laws of N. Y., 1929). But a reading of the decisions in the cases above cited shows that they were placed on other and distinct grounds. And it appears that the case of *Clute & Mead* v. *Bool* (N. Y. 1840), 8 Paige (N. Y.), 83, which is one of the two cited by respondents in support of their contention, contains certain *dictum* which in some respects seems to put it out of line with the other decisions of the court. (See *Williams* v. *Thorne, supra.*)

Respondents contend also that the New York doctrine cannot be applied to a discretionary trust, such as we have here, which provides that whatever payments shall be made to Canfield over and above the annual sum of $1200 are subject to the absolute discretion of the trustee. Under the New York decisions, however, such factor does not deny to the creditor the right to maintain an action to collect a certain portion of whatever surplus the trustee might thereafter decide to award the beneficiary over and above the amount necessary for his maintenance (*Hamilton* v. *Drogo,* 241 N. Y. 401 [150 N. E. 496]), which amount, in this state, is measured by the so-called "station-in-life" rule. (*Magner* v. *Crooks, supra.*) Obviously, therefore, if the trustee in the present case, in the exercise of its discretion, shall award to the beneficiary nothing more than he is entitled to under said rule, appellant will receive nothing. But in this respect it will be noted that the terms of the will indicate a belief on the part of the settlor of the trust that $1200 a year would

be sufficient to take care of the necessities of the beneficiary; and the complaint alleges that he has been receiving $50,000 a year from the trustee. It would appear, therefore, that if he continues to be paid these large annuities, there will be ample surplus, over his necessitous demands, as alleged in the complaint, to apply to the payment of the amounts due under the decree to which he stipulated.

In concluding this branch of the discussion it may be said that the adoption of the New York doctrine will in no way deny to a testator desiring to take care of a spendthrift the right to create a trust, of personal property, or of real and personal property, to carry out such desire, for the reason that regardless of the character of property constituting the trust fund, under the rule of *Magner* v. *Crooks, supra,* the beneficiary is entitled to receive, within the limitations fixed by the trust, sufficient income to support himself and those dependent upon him, according to the mode of life to which they have been accustomed, the manner in which they have been reared, and to care for any affliction from which he or his family may be suffering. It will mean simply that the rights expressly granted by legislative enactment to the creditor of a beneficiary taking under a real property trust will be extended by judicial decision to creditors of a beneficiary taking under a personal property trust, or one created out of personal and real property; and no just reason can be assigned why such parity of rights should be denied; nor can any sound excuse be offered in support of a legal principle which would compel one beneficiary of a trust to apply a portion of the surplus of his income to the payments of his just debts, and under like conditions grant to another beneficiary absolute immunity from such payment, merely because the income of the former is derived from a trust of real property and the income of the latter is derived from a trust of personal property, or personal and real property. For the reasons stated, we are of the opinion that regardless of whether the trust herein was created to receive the income from real or personal property or both, plaintiff is entitled to maintain the action.

Appellant makes the further contention that even though the strict rule of immunity be upheld in cases of trusts of personal property as against the demands of creditors gen-

erally, the obligation of a beneficiary to pay for the support of his wife or children, or both, or a judgment rendered against him for such purpose, is not a debt as that term is understood and applied in the law of spendthrift trusts; that the settlor of such a trust must necessarily contemplate in creating the same the taking care of, not only the beneficiary himself, but also those lawfully dependent upon him for support; and that consequently a wife and children are entitled to certain preferential rights against the annuities to be paid to the beneficiary not available to general creditors. In support of such contention appellant cites a number of cases so holding, the leading one being *Re Estate of Mary H. Moorehead*, 289 Pa. 542 [137 Atl. 802, 52 A. L. R. 1251]. In this connection it is to be noted that the interlocutory decree of divorce herein, embodying the stipulated alimony settlement, was entered in April, 1930; that the final decree was entered in April, 1931, and that the complaint herein was filed in September, 1931, and the judgment entered in January, 1932. And it may be reasonably inferred from these dates that at the time the stipulated decree was entered it was the belief of Canfield and appellant that the decree was enforceable under the rule of the Moorehead case and the others adhering to the law therein declared. However in March, 1932, the contention appellant here advanced under the authority of those cases was urged in the District Court of Appeal of the Fourth District in the case of *San Diego Trust & Sav. Bank* v. *Heustis*, 121 Cal. App. 675 [10 Pac. (2d) 158], wherein the entire income of the beneficiary was sought to be appropriated, and the court there refused to follow those cases and held the contention made under the authority thereof to be without merit. No application was made to the Supreme Court for a review of the decision, but its effect has been criticised by commentators in some of the law reviews (see 21 Cal. Law Review, pp. 23, 150). However, in view of the conclusion we have reached herein that appellant may maintain the present action as a general judgment creditor against the surplus of the beneficiary's income, it is unnecessary to analyze the decision in the Heustis case or to inquire into the merits of the question there considered, more than to say that in the Heustis case neither the questions of the construction of the provisions of section 859 nor the application of the New York doctrine

290

to trusts of personal property were there urged, considered or passed upon. Consequently the decision in that case does not conflict in any manner with the conclusions we have reached herein on those questions.

The remaining points urged in support of the trial court's ruling including nonjoinder of parties are without merit. The judgment of dismissal is vacated, and the order sustaining the demurrers without leave to amend is reversed with directions to overrule the same.

Tyler, P. J., concurred.

Cashin, J., deeming himself disqualified, did not participate in the opinion.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1935.