[L. A. No. 15021. In Bank.—June 1, 1938.]

MARY BOWEN KELLY et al., Appellants, v. EDWARD RUDOLPH KELLY, Respondent.

John H. McCorkle, Hamilton, Lindley & Higgins for Appellants.

No appearance for Respondent.

SEAWELL, J.—Plaintiff individually and as guardian and trustee of her two minor sons brought this action to compel defendant, her former husband, to pay to her one-half of all money and property received by him upon the termination of a testamentary trust, under which said defendant and others became entitled to share in the distribution of the *corpus* of the trust property. Plaintiff Mrs. Kelly claims this right against defendant by virtue of a property settlement executed prior to the termination of the trust and while they were husband and wife. The court below upheld defendant's contention that by reason of the fact that the instrument creating the trust contained a spendthrift clause plaintiffs were not entitled to receive any part of the trust estate from defendant. Plaintiffs appeal from the judgment for defendant. Pending this appeal defendant died and Thomas McCarty, special administrator of his estate, has been substituted as defendant and respondent.

The property settlement under which plaintiff Mrs. Kelly claims on behalf of herself and her minor sons was executed on March 30, 1928, by the Kellys "for the purpose of forever settling their property rights". It provided that property of record in the name of either party should be the separate property of such party. Under this provision the wife received the home in San Diego in which they resided and also

a quarter block in the Point Loma district in San Diego, and Mr. Kelly was the owner of a house and lot in San Diego.

The agreement contained the following provision, which is the basis of the instant action:

"SECOND, the party of the first part [Mr. Kelly] hereby grants and assigns to the party of the second part a one-half interest in any and all property of any and every kind to which first party may now be entitled, or of which he may hereafter receive or become entitled to, by gift, inheritance, bequest, or as beneficiary of any trust, of which one-half, one-third of such half shall belong to the party of the second part [Mrs. Kelly], in fee and in perpetuity, and to her heirs and assigns forever, but the other two-thirds of such one-half interest, the party of the second part takes and shall take in trust, holding for her own use only for herself the rents, issues, and profits for her life only, the remainder to be held by her in trust for Robert Bowen Kelly and Charles Edward Kelly, children of the parties hereto, share and share alike, and to their heirs and assigns forever."

Said agreement further provided that in the event of a divorce between the parties, the provisions of the agreement should be deemed a property settlement, and should be incorporated in the decree of divorce in lieu of any and all other provisions for either division of property or alimony.

In October, 1928, seven months after the agreement was executed, Mrs. Kelly commenced suit for divorce. Upon defendant's filing an answer in which he alleged that the property agreement was void, Mrs. Kelly dismissed the action before trial. The parties were subsequently divorced, but neither the time, place, nor party on whose application the divorce was granted appears herein. Nor does it appear whether said agreement was approved, nor whether other provision was made for the support of Mrs. Kelly and the two children by the decree of divorce.

The provision of paragraph Second above set forth was made in anticipation of the termination of two trusts upon the death of defendant's mother, and not in anticipation of any other expected contingencies. Said two trusts were created by the wills of Thomas Smith and Mary E. K. Smith. Under said wills the income of the trust property was to be paid to named beneficiaries for life, and upon the death of the last survivor of said beneficiaries the trust was to terminate and the *corpus* distributed to the descendents of the

life beneficiaries *per stirpes*. Defendants' mother, Elizabeth B. Kelly, was the last survivor of the named life beneficiaries. She died in December, 1928. The two trusts were being administered by the Pennsylvania Company for Insurance of Lives and Granting Annuities, as trustee named in said wills. The Thomas Smith trust contained a spendthrift clause as follows:

"By my present testamentary provisions, it is my desire to benefit only the respective beneficiaries, to the utter exclusion of their creditors and alienees, past, present and future, and it is my wish to guard them against themselves, and their own waste and improvidence. I therefore direct that every bequest, annuity, and devise herein made and given shall be taken as made and given, to the persons respectively entitled, free and clear of his or her debts, contracts, engagements, alienations and anticipations, and of all responsibility therefor. Such legacies, annuities and devises shall be paid and conveyed, to the respective beneficiaries without regard to any liens or attachments."

Mrs. Kelly admitted that when the property settlement was executed in 1928 she was informed of the spendthrift clause in the will of Thomas Smith. Thomas Smith died on May 20, 1883, a resident of Pennsylvania. No contention is made that any part of the trust property was ever located in California. Following the death of defendant's mother, the last survivor of the named life beneficiaries, the trustee filed its petition in the orphans' court of Philadelphia County, Pennsylvania, in which the will of Thomas Smith had been probated and the trust property distributed to the trustee, wherein said trustee prayed for distribution of the trust property in accordance with the will of the testator. Both plaintiff herein, Mary Bowen Kelly, and defendant, Edward Rudolph Kelly, appeared separately by their respective attorneys in this proceeding in the orphans' court in Pennsylvania. On March 4, 1930, the auditing judge ruled that by virtue of the spendthrift clause in the will of Thomas Smith the defendant's share of the *corpus* was required to be paid by the trustee directly to Edward Rudolph Kelly, and refused to order distribution of any part of his share to the claimant Mary Bowen Kelly. Mrs. Kelly filed exceptions to this order of the auditing judge, but it was confirmed on May 2, 1930.

In the instant action in this state Mary Bowen Kelly lays claim to one-half of the money and other personal property

distributed to Edward Rudolph Kelly by the above decree of the Philadelphia county court. The instant action does not concern any property derived by defendant from the Mary E. K. Smith trust. This trust did not contain a spendthrift clause. Relying on the property settlement, Mary Bowen Kelly has collected more than $11,000 from the trustee of said trust.

On October 25, 1929, after filing of their separate appearances in the Pennsylvania court, Edward Rudolph Kelly commenced an action in this state against Mary Bowen Kelly as the sole defendant, in which he prayed that the court adjudge the property settlement of March, 1928, invalid, and enjoin said defendant from asserting any right to trust funds. The court granted a temporary injunction. This action came to trial in July, 1930, after the Pennsylvania decree had been confirmed. The trial court adjudged in the action in this state that the property settlement was a valid contract and dissolved the temporary injunction. This judgment was affirmed on appeal. (*Kelly* v. *Kelly,* 129 Cal. App. 325 [18 Pac. (2d) 781].) Plaintiff Edward Rudolph Kelly had contended therein, among other points, that the agreement was void for uncertainty, that he had entered into it under a mistaken knowledge of the law, and of his legal rights, and that it was invalid because there was ''no guaranty that the supposed object of the parties in executing this agreement, to wit, the provision for the care and maintenance of the minor children, would be carried out''.

Plaintiff did not allege nor contend in said action that by virtue of the spendthrift clause in the will of Thomas Smith his interest in the *corpus* of the trust estate was not subject to said property settlement, nor pray that on such ground Mary Bowen Kelly should be restrained from collecting any portion of his share in the *corpus* of the Thomas Smith trust. As noted above, prior to the trial of this former California action in July, 1930, it had been determined by decree of the Pennsylvania court that by virtue of the spendthrift clause the property settlement agreement did not operate upon Edward Rudolph Kelly's share in the *corpus* of the trust estate in the hands of the trustee, and said property was required to be distributed directly to Edward Rudolph Kelly. The Pennsylvania court had held that the spendthrift provision applied to the *corpus* which was to be paid to defendant upon the death of the life beneficiaries, as well as to

the income paid to the life beneficiaries, and exempted the entire interest of Edward Rudolph Kelly in the *corpus* in the hands of the trustee from the property settlement agreement. Pennsylvania decisions sustain the validity of spendthrift provisions as applied to the *corpus*. (*Beck's Estate*, 133 Pa. 51 [19 Atl. 302, 19 Am. St. Rep. 623]; *Goe's Estate*, 146 Pa. 431 [23 Atl. 383, 28 Am. St. Rep. 805]; *Re Estate of Hall*, 248 Pa. 218 [93 Atl. 944, 2 A. L. R. 855]; see, also, *Boston Safe Deposit & Trust Co.* v. *Collier*, 222 Mass. 390 [111 N. E. 163, Ann. Cas. 1918C, 962]; *Hopkinson* v. *Swaim*, 284 Ill. 11, 25 [119 N. E. 985]; *Von Kesler* v. *Scully*, 267 Ill. App. 495.) The Pennsylvania court further held that the agreement that Mary Bowen Kelly should receive a share of Edward Rudolph Kelly's interest in the trust property was not analogous to a court decree for support and maintenance, recognized under certain circumstances in Pennsylvania as not subject to limitation by a spendthrift clause. (*Moorehead's Estate*, 289 Pa. 542 [137 Atl. 802, 52 A. L. R. 1251].) As pointed out above, Pennsylvania was the residence of the testator, and there is no suggestion that any of the trust estate, real or personal, was ever located in California. Nor did defendant ever bring said property to this state after its receipt by him, according to his testimony.

Thus the question whether the spendthrift clause in the will of Thomas Smith rendered the interest of Edward Rudolph Kelly inalienable while in the hands of the trustee was determined in the proceeding in Pennsylvania in which the trustee and also plaintiff and defendant herein appeared separately. That question was not open for determination in the proceeding subsequently tried in this state in July, 1930, and in fact no attempt was made to relitigate this matter in said former proceeding, the judgment in which was affirmed by the appellate court. (*Kelly* v. *Kelly, supra.*)

The 1930 action in this state, brought to obtain an adjudication that the property settlement was invalid and to restrain Mrs. Kelly from collecting funds in the hands of the trustee, had a purpose notwithstanding the entry of the Pennsylvania decree before the California action came to trial. Plaintiff Edward Rudolph Kelly in said California action was seeking to restrain Mrs. Kelly from collecting any part of his share in the Mary E. K. Smith trust, which was ready for settlement, and which contained no spendthrift provision.

The Pennsylvania decree concerned only the Thomas Smith trust.

The present action was commenced by Mrs. Kelly on August 14, 1933, more than three years after the order of the Pennsylvania court denying the claim of Mrs. Kelly for payment to her by the trustee of one-half of Mr. Kelly's share in the *corpus* of the Thomas Smith trust. She prayed that Edward Rudolph Kelly be declared trustee for her and her two minor sons of one-half of all money and property received by him as his share of the Thomas Smith trust, that he be required to turn over to her one-half of said property, and if this was impractical that she have judgment against him for the value of said one-half of the property.

In the present action plaintiff contends that the Pennsylvania decree simply determined that plaintiff could not reach Edward Rudolph Kelly's share of the Thomas Smith trust while it remained in the hands of the trustee; that said decree was not intended to determine plaintiff Mary Bowen Kelly's right to reach the trust property after it had left the possession of the trustees and had been turned over to Kelly. The trial court found in accordance with this contention, but it nevertheless held that plaintiff Mary Bowen Kelly had no rights in the fund in the hands of her former husband paid to him from the Thomas Smith trust.

 It is of the essence of a spendthrift trust that it is not subject to voluntary alienation by the *cestui,* nor subject to involuntary alienation through attachment or other process at the suit of his creditors. (*McColgan* v. *Walter McGee, Inc.,* 172 Cal. 182 [155 Pac. 995, Ann. Cas. 1917D, 1050]; *Seymour* v. *McAvoy,* 121 Cal. 438 [53 Pac. 946, 41 L. R. A. 544]; *San Diego Trust etc. Bank* v. *Heustis,* 121 Cal. App. 675 [10 Pac. (2d) 158]; *Canfield* v. *Security First Nat. Bank,* 8 Cal. App. (2d) 277 [48 Pac. (2d) 133]; 1 Bogert, Trusts and Trustees, p. 75; 43 Harvard Law Review, 84; 21 Cal. Law Rev. 142; 22 Cal. Law Rev. 482.) But it is everywhere agreed that after the beneficiary has actually received the trust property his creditors may reach it and he may dispose of it as he wishes. (*Beck's Estate, supra; Goe's Estate, supra; Board of Charities etc.* v. *Lockhard,* 198 Pa. 572, 574 [48 Atl. 496, 82 Am. St. Rep. 817]; 1 Bogert, Trusts and Trustees, p. 717; 43 Harvard Law Rev. 84; 22 Cal. Law Rev. 492; 21 Cal. Law Rev. 143.) A voluntary assignment executed before payment to the beneficiary confers on the as-

signee no right to demand payment or delivery from the *trustee* as it becomes due to the beneficiary. The Pennsylvania court in a proceeding in which the trustee and Mr. and Mrs. Kelly, separately, appeared, has determined that Mr. Kelly's entire share of the *corpus* in the possession of the trustee was subject to the spendthrift clause and all payable directly to him. But does the assignment to Mrs. Kelly executed during the continuance of the trust nevertheless give her as such assignee a claim upon the trust property after it shall reach the hands of the beneficiary?

It is the intent of the trustor in creating a spendthrift trust that the benefits shall reach the hands of the *cestui* free from liens and attachments. A provision commonly found in spendthrift clauses is that the beneficiary shall not "anticipate" his right to receive trust benefits. The provision in the Thomas Smith will was that every bequest should "be taken as made and given, to the persons respectively entitled, free and clear of his or her debts, contracts, engagements, *alienations* and *anticipations* and of all responsibility therefor". If, as contended by Mary Bowen Kelly herein, the one-half of the property received by Edward Rudolph Kelly from the Thomas Smith trust is held by him in trust for her by virtue of the antecedent property settlement, then Edward Rudolph Kelly has not received said property free and clear as directed by the trustor, but subject to a charge in favor of Mary Bowen Kelly, and said Edward Rudolph Kelly has anticipated his interest in the trust estate.

We are of the view that the intention of the trustor that the beneficiary should receive the trust property free and clear of specific liens and charges may and should be given effect. But although it cannot be held that the beneficiary, upon receipt of trust property, in turn holds said specific property, or its proceeds, in trust for his assignee under an assignment made prior to his receipt of the trust property without doing violence to the intent of the trustor to the effect that the beneficiary shall receive the property free of liens and charges, we are of the view that an assignment by the beneficiary, in the nature of a promise to pay or turn over trust property when received by him, is not wholly invalid. Although such an assignment or promise gives the promisee no right in specific trust property received by the beneficiary, or in its proceeds, such promisee has available to him the usual remedies for breach of contract and may sue

to recover damages for breach of said contract, in which the damages will ordinarily be the value of the property the promisee would have received had the beneficiary performed his promise to turn over a fraction of the trust property upon its receipt. ■ Having obtained a judgment for damages the promisee may levy upon property of the promisor not exempt from execution, including property received by him from the trust, since such property after receipt by the promisor-beneficiary is subject to attachment and execution for debts and engagements contracted before as well as after the receipt of the trust property by the beneficiary.

In the event she was not entitled to judgment for one-half of the specific trust property, or its proceeds, the plaintiff herein prayed for judgment for the value of the property she would have received had defendant performed his promise. We are of the view that she was entitled to such judgment.

■ There is no difficulty in construing the property settlement agreement as a contract to pay over one-half the trust benefits when received, although words of present assignment are used. In fact such construction is authorized by the principles laid down by this court in *Bridge* v. *Kedon*, 163 Cal. 493 [126 Pac. 149, 43 L. R. A. (N. S.) 404], holding that the attempted assignment by an heir of his expectant interest in the estate of his mother, although nonassignable under the provisions of the Civil Code, could be enforced in equity as a contract to assign after the mother's death against the property which actually descended to him. It is there said: "The California cases . . . state the rule as a general one that equity will uphold assignments, not valid at law, of any future interests, as a rule applying alike to those which are vested but relate to property to come into existence in the future, and those which rest only in possibility, provided they are fairly made and not against public policy." (See 21 Cal. Law Rev. 394, and 22 Cal. Law Rev. 446.) In *Cheek* v. *Farmers etc. Nat. Bank*, 14 Cal. App. (2d) 176 [57 Pac. (2d) 1325], this rule was applied to the assignment of the interest of a beneficiary under a trust. It is true that in both the cited cases the courts went further and held that the contract created a lien which attached to the assigned property as it reached the hands of the assignor but, for the reasons already given, to enforce a lien in the present case would defeat the purpose of the trustor. However, the treatment

of the assignment as a contract to assign does no violence to the trust intent.

█ The application of these principles to the attempted assignment of his interest by the beneficiary of a spendthrift trust is suggested by the Restatement of the Law of Trusts, section 152, subdivision K; Griswold on Spendthrift Trusts, section 375, pages 340–342, and in an article by the same author appearing in 43 Harvard Law Review, 63. As in *Bridge* v. *Kedon, supra,* it is there recognized that the question of the application of these principles in a particular situation is one of policy. We find no requirements of public policy which preclude their application here or compel the protection of the proceeds of a spendthrift trust after they have reached the hands of the beneficiary from the incidents of an otherwise valid engagement entered into during the life of the trust. Especially is this conclusion strengthened by the consideration that it is the policy of this state to limit the protection of the spendthrift clause to the extent necessary to support and educate the *cestui* in the manner to which his station in life has accustomed him. (*Canfield* v. *Security First Nat. Bank,* 8 Cal. App. (2d) 277 [48 Pac. (2d) 133]; see, also, 22 Cal. Law Rev. 471; 21 Cal. Law Rev. 142; Bogert, Trusts and Trustees, vol. I, sec. 222.)

For the reasons given, we are not impressed by the argument of the court in *Bixby* v. *St. Louis Union Trust Co.,* 323 Mo. 1014 [22 S. W. (2d) 813], which reaches a contrary result and is criticized by Professor Griswold in the articles cited above.

The plaintiffs are entitled to judgment for breach of the contract to assign, in which the measure of damages is the value of the property which the defendant would have turned over to them had he kept his promise.

The judgment is reversed.

Curtis, J., Waste, C. J., and Houser, J., concurred.