**CENTURY INDEMNITY CO. et al.**

v.

**WOODRUFF et al.**
**No. 31607.**

United States District Court
N. D. California, S. D.

Feb. 12, 1954.

Worthington, Park & Worthington and Alden Ames, San Francisco, Cal., for plaintiffs.

Lois B. Preston, San Francisco, Cal., W. Gordon Eustice, Los Altos, Cal., for defendants.

MURPHY, District Judge.

This action arises out of the administration of the estate of Louis H. Bigelow, deceased. Defendant Ellen Woodruff (hereafter defendant) was administratrix of the estate. Plaintiff, the Century Indemnity Company, was the surety on the administratrix' bond. Defendant's son Ted and daughter-in-law Dorothy were named as codefendants.

The pertinent facts may be summarized briefly. On July 24, 1948, Louis H. Bigelow died intestate at Chicago, Illinois, leaving as his heirs at law his daughter Ellen Woodruff and his granddaughter Jacqueline Fauntleroy. Under Illinois law, the two heirs would share equally in the decedent's estate. The day prior to his death, Mr. Bigelow had drawn and delivered to defendant a check for $50,000. On August 3, 1948, The Northern Trust Company, a corporation, was appointed administrator of the estate of Louis H. Bigelow by the Probate Court of Cook County, Illinois, and acted in that capacity until January 14, 1949, when that company was discharged and defendant was appointed administratrix de bonis non. The Probate Court fixed bond in the sum of $275,000 which plaintiff put up and executed as surety, securing defendant's signature to the usual indemnity agreement as part of the consideration. In the fall of 1949, defendant filed two documents signed by Jacqueline Fauntleroy which purported to assign and transfer to defendant all of Miss Fauntleroy's rights and interests in the estate of her grandfather. Pursuant to these assignments and with the Court's approval, defendant distributed to herself the entire estate consisting of cash, securities, jewelry and other personal property of a value in excess of $200,-000. The final report and account were approved on March 13, 1950 and defendant was discharged as administratrix. About forty days later, Miss Fauntleroy filed a petition in the Probate Court against defendant and plaintiff charging that the assignments had been procured by defendant's fraud, duress and breach of fiduciary duty, and praying that the various orders entered by the Court in the course of the administration of the estate be vacated and that defendant be ordered to distribute to petitioner her share of the

estate. The jurisdiction of the Probate Court to reopen the administration having been challenged by counsel for both plaintiff and defendant, the Court expressly found that it had jurisdiction and, after a hearing on the merits, set aside defendant's final account as well as Miss Fauntleroy's assignments and directed that Miss Fauntleroy be paid the sum of $67,500 from the estate in full satisfaction of her claims. As defendant had managed to dissipate or convert into knick-knacks the entire estate, plaintiff paid to Miss Fauntleroy the sum of $67,500 and was subrogated to all of the latter's rights against defendant. Defendant's indebtedness to plaintiff was increased to $70,100— plus interest by attorneys' fees and other expenses properly chargeable against defendant. To evidence that indebtedness, she signed a note secured by chattel mortgage on her personal property and a trust agreement under which plaintiff was to receive the periodic payments due defendant under numerous annuity policies taken out by her father during his life. As of December 18, 1953, defendant's obligation to plaintiff had been reduced to $44,009.05 through voluntary turning over of securities, a foreclosure sale of the mortgaged personal property and collection of the proceeds of some of the annuity policies covered in the trust agreement.

Plaintiff, claiming that defendant had surreptitiously brought to California certain items of property covered by the chattel mortgage, wants to reach the property so appropriated or its mone-

tary equivalent. He also seeks a money judgment covering all amounts due from defendant. In addition, plaintiff prays for an order directing defendant to turn over to him the proceeds of certain annuity policies hereafter more fully discussed. Lastly, plaintiff wants to trace into the hands of defendants Ted and Dorothy Woodruff such of the estate property as defendant Ellen Woodruff had given to Ted and Dorothy.

All defendants answered and defendant Ellen Woodruff filed a counterclaim against plaintiff containing numerous allegations, the most basic one being that the Illinois Probate Court lacked jurisdiction to reopen the estate proceedings more than thirty days after they had been closed and that such lack of jurisdiction invalidated the subsequent transactions leading up to plaintiff's claim.

The first question before the Court is the legality of the Illinois Probate Court's action in reopening the Louis Bigelow estate more than thirty days[1] after it had been closed.

■■■ The point need not be labored that a judgment rendered by a Court of competent jurisdiction is entitled to every presumption of validity.[2] The judgments of the Illinois Probate Court are entitled to such a presumption.[3] Accordingly, a party who collaterally attacks such a judgment bears a heavy burden of proof.

■■■ The record shows that when Miss Fauntleroy first petitioned the Illinois Probate Court to reopen the pro-

---

1. Ill.Rev.Stats. ch. 77, secs. 82 and 84 provide that: "Hereafter every judgment, decree or order, final in its nature, of any court of record * * * shall have the same force and effect as a conclusive adjudication upon the expiration of thirty days from the date of its rendition as, under the law heretofore in force, it has had upon the expiration of the term of court at which it was rendered."

"Any such judgment, decree or order may hereafter be modified, set aside or vacated after the expiration of such thirty days in the same cases, to the same

extent and by the same modes of proceeding as, under the law heretofore in force, it might have been modified, set aside or vacated after the expiration of the term of court at which it was rendered."

2. Kalb v. Feuerstein, 1940, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; Michener v. Johnston, 9 Cir., 1944, 141 F.2d 171.

3. Turner v. Alton, 7 Cir., 1948, 166 F.2d 305; Allen v. Shepard, 1877, 87 Ill. 314; Barnard v. Michael, 1945, 392 Ill. 130, 63 N.E.2d 858.

ceedings, the Court's jurisdiction to reopen was expressly challenged by plaintiff as well as by defendant. Though both plaintiff and defendant were represented by well-known Chicago counsel, no appeal was taken from the Court's decision. It is not amiss to speculate that if the Court had been as clearly in error as defendant now asserts, she or plaintiff would have taken an appeal from a ruling which had a substantial adverse effect upon both of them. Defendant is correct in asserting that Illinois law stringently circumscribes the conditions under which a Court may reopen a case after thirty days have elapsed. A petition to reopen after thirty days is deemed a collateral attack and, if the basis for attack is fraud, may be granted only where the fraud was of such a character as prevented the Court from acquiring jurisdiction or invested it only with colorable jurisdiction.[4] Limited as the categories of judgment-voiding fraud may be, the Illinois Probate Court could, I believe, reasonably have held that fraud which in effect prevented Miss Fauntleroy from appearing and being heard was of the type which invested the Court with colorable jurisdiction at best.[5] And while it is of course not the function of this Court to review the evidence before the Illinois Probate Court, the record is more than ample to sustain a finding that defendant's conduct amounted to such jurisdictional fraud. Defendant has failed to overcome the presumption of regularity and validity attaching to the decree of the Cook County Probate Court dated September 18, 1950.

Even if the September 8, 1950 decree were invalid, the Court is of the opinion that Ellen Woodruff cannot be heard to attack it. The decree recites that a settlement of Miss Fauntleroy's claim was agreed upon by all the interested parties prior to the Court hearing. The matter was in effect presented to the Probate Court in the form of a consent decree under which Miss Fauntleroy was to receive $67,500. While defendant now claims that she was coerced into agreeing to the settlement, her claim is spurious. The record shows that when Miss Fauntleroy first presented her petition, the firm of attorneys then representing defendant advised their client that no reasonable defense to Miss Fauntleroy's claim could be presented. Thereupon the firm withdrew from the case or was discharged. Their successors, after some investigation, came to the same conclusion. The "coercion" of which defendant speaks was nothing more than her counsel's opinion that if she did not arrive at an agreement with Miss Fauntleroy, she would in all probability be found liable in an amount exceeding $110,000. Under those circumstances, she was well advised to accept the compromise agreement. Plaintiff acted pursuant to a valid Court order when he paid the sum of $67,500 to Miss Fauntleroy. He is entitled to a judgment for the unpaid portion of $70,100 plus interest which defendant contracted to pay to plaintiff.

We now turn to the annuity policies in dispute. To secure her contractual liability to plaintiff, defendant executed a trust agreement under which she assigned to the named trustee the periodic proceeds of certain annuity policies taken out by Louis H. Bigelow and payable to defendant. The trust agreement

---

4. The subject of reopening a judgment on the ground of fraud is fully discussed by the Illinois Supreme Court in Barnard v. Michael, note 3, supra. See also Bernero v. Bernero, 1936, 363 Ill. 328, 2 N.E.2d 317; Trupp v. First Englewood State Bank of Chicago, 1940, 307 Ill.App. 258, 30 N.E.2d 198.

5. Courts have frequently asserted that fraud which prevents a party from presenting his case to the Court is extrinsic, so that a judgment procured on the basis of such fraud may be collaterally attacked. In re Burton Coal Co., D.C.N.D.Ill. 1944, 57 F.Supp. 361; Ward v. Durham, 1890, 134 Ill. 195, 25 N.E. 745; In re Luer's Estate, 1952, 348 Ill. App. 324, 108 N.E.2d 792; Stark v. Mintz, 1948, 85 Cal.App.2d 119, 192 P.2d 87.

recited that all installments received by the trustee after September 1, 1951 were to be paid to plaintiff until such time as defendant's obligation to plaintiff had been entirely satisfied. Some of the policies—and those are the only ones here in dispute—contained "spendthrift clauses". In order to give effect to the trust agreement, defendant directed the insurance companies concerned to mail all future checks to which she was entitled under the policies to her c/o the trustee's address. She further agreed to endorse all checks to the trustee upon receipt. She has since refused to endorse the checks. Plaintiff seeks an order from this Court compelling such endorsement and enjoining defendant from countermanding her instructions to the insurance companies.

It is clear that to grant plaintiff the relief prayed for would vitiate the effect of the spendthrift clause. Illinois, where the insurance contracts as well as the assignment were executed, fully enforces such clauses.[6] Assignment of beneficial interest by the beneficiary prior to his receipt of the property is therefore of no effect in Illinois.[7] California, the State of defendants' residence, though recognizing spendthrift trusts, treats an assignment like that here involved as a contract to assign, so that an action for breach can be maintained with damages measured by the value of the property which defendant would have turned over had she kept her promise.[8] Even in California, the assignment would not be specifically enforced by injunctive relief. But defendant is correct in asserting that Illinois rather than California law governs this transaction.[9] Plaintiff cannot have the relief here prayed for.

Two minor matters remain for decision. As previously indicated, plaintiff alleged, and the Illinois Court in its foreclosure order found, that defendant had wrongfully removed or concealed nineteen items of personal property covered by the chattel mortgage. Testifying in this Court, defendant admitted that two of these items, a Paredot 14 karat ring and a Silver Blue Mink coat, were still in her possession. The rest, curiously, have been lost or destroyed. Plaintiff seeks an order directing defendant to deliver the two items still in her possession to the U. S. marshal for public sale and application of the proceeds to the judgment. To that, he is entitled.

Lastly, the liability of defendants Ted and Dorothy Woodruff. Admittedly, gifts of cash and property aggregating almost $20,000 were made by Mrs. Woodruff to her son and daughter-in-law in the years following the death of Louis H. Bigelow. And while defendant Ted Woodruff testified that he had no knowledge of the source of these gifts, his assertion challenges the credulity of the Court in view of the close family ties then subsisting between mother and only child, and in view of the fact that he participated in the negotiations leading up to Miss Fauntleroy's relinquishment of her rights. But all this notwithstanding, plaintiff faces an insurmountable obstacle to tracing estate property into Ted's and Dorothy's hands. The record shows that the 83 year old Mr. Bigelow had given to defendant the sum of $50,000, one day before his death. While the Northern Trust Company, Bigelow's first administrator, claimed that the death-bed gift was part of the decedent's estate, the Illinois Probate Court

---

6. Mohler v. Wesner, 1943, 382 Ill. 225, 47 N.E.2d 64; McKeown v. Pridmore, 1941, 310 Ill.App. 634, 35 N.E.2d 376. Child-support and alimony claims, however, may be satisfied directly out of the trust. Tuttle v. Gunderson, 1929, 254 Ill.App. 552.

7. Blair v. Linn, 1934, 274 Ill.App. 23. See generally Bogert, Trust and Trustees (1951) sec. 222.

8. The leading California case is Kelly v. Kelly, 1938, 11 Cal.2d 356, 79 P.2d 1059, 119 A.L.R. 71, noted in 48 Yale L.J. 666 (1939).

9. Restatement of the Law, Conflicts of Law, secs. 348, 350; Goodrich, Conflicts of Law sec. 110 (1927).

held that a valid inter-vivos transaction was involved and gave the money to defendant outright. That judgment has not been and cannot be attacked here. Defendant therefore had a substantial sum of money out of which she could lawfully make gifts to whomever she chose. Plaintiff has entirely failed to establish that any estate money reached the hands of defendants Ted and Dorothy Woodruff.

A judgment will be entered in favor of plaintiff, The Century Indemnity Company and against defendant Ellen Woodruff for $44,009.05. An order will issue directing defendant Ellen Woodruff to deliver to the U. S. marshal the above-mentioned Paredot 14 karat ring and Silver Blue Mink coat for public sale and application of proceeds against the judgment.

All allegations made by defendant Ellen Woodruff in her answer and counterclaim which have not been discussed in this opinion are expressly found to be without merit.

Let findings of fact and conclusions of law be prepared in accordance with the rule.