[Civ. No. 415. Fifth Dist. Dec. 22, 1964.]

JAMES M. DRYER, as Administrator, etc., Plaintiff and Appellant, v. LAVEY LOUK DRYER, Defendant and Respondent.

James A. Hayes for Plaintiff and Appellant.

Noren Eaton for Defendant and Respondent.

CONLEY, P. J.—■■■ The plaintiff, James M. Dryer, as administrator of the estate of Nathan H. Dryer, deceased, appeals from a summary judgment in favor of the defendant, LaVey Louk Dryer. The elder Dryer died on May 6, 1960, leaving three adult sons and a minor daughter aged 13 years. His first wife, Grace, predeceased him on October 1, 1959, after a marriage which lasted for 32 years. Four months later Nathan H. Dryer married the respondent herein, LaVey Louk Dryer, and, during a marriage which lasted only 10 weeks, she was allegedly made the beneficiary of the following property which formerly belonged to him:

1. Approximately $9,000 as the cash proceeds of a federal group life insurance policy upon Nathan Dryer's life;

2. The real property and the family home in Santa Ana;

3. Approximately $1,335 in cash as the annual leave payment of Nathan Dryer from his employer, Long Beach Naval Shipyard;

4. $1,600 in cash from decedent's credit union; and

5. Cash from a bank account at First Western Bank and Trust Company and miscellaneous minor assets.

The complaint in the present case, after alleging his appointment as administrator, names the surviving sons and daughter of the decedent, specifies the duration of his mother's marriage and her death from cancer after a lingering illness. The complaint continues by alleging that Nathan H. Dryer suffered substantial physical and mental deterioration by reason of the illness of his wife, and avers that while he was in such weakened physical and mental condition the defendant, LaVey Louk Dryer, falsely and fraudulently and with the intent to defraud him and acquire his property represented to him that she would care for him and for his minor daughter and would maintain a suitable home and environment for them, or their survivor.

Paragraph VI of the complaint is as follows:

"That all of said representations were false and fraudulent and were then and there known by said defendant to be false and fraudulent and untrue.

"That in truth and in fact said decedent died approximately ten weeks after participating in a marriage ceremony with said defendant, LaVey Louk Dryer and said LaVey Louk

Dryer has failed and refused to care for said minor child of said decedent and has stated to plaintiff and to said minor child that she has no desire to maintain a home or to provide or care for said minor child.

"That within a few weeks after said decedent's death, said defendant LaVey Louk Dryer, applied for, and received, all insurance proceeds and entitlements arising from said decedent's death and has terminated all of said decedent's interests in joint tenancy property and the same now stands of record in her name alone.

"That in addition thereto, said defendant has not provided, is not providing, nor does she intend to provide, a home for said decedent's minor child. That said decedent's minor child is not being supported or maintained or cared for by said defendant LaVey Louk Dryer and has not been so cared for since a few days after said decedent's death."

The complaint alleges that the decedent believed the defendant's statements and as a result transferred to the defendant all of his property either outright or in joint tenancy, and that he would not have done so except for the false and fraudulent representations of the defendant. The complaint says that all of the assets are presently in the hands of, or controlled by, the defendant; it further states that the real property in question has deteriorated so that a receiver should be appointed. Paragraph X avers that plaintiff has just discovered the nature and extent of the fraud and is therefore acting promptly in the prosecution of the cause.

An answer was filed by LaVey Louk Dryer in which she denies any fraudulent motive or misrepresentation, and in which she alleges that the questions involved in the case are res judicata by reason of a former judgment in her favor.

The essential pleadings under which the case was decided consist of a written motion for summary judgment supported by an affidavit which sets forth as exhibits copies of the essential pleadings in the former action (Orange County No. 89131), and which prays for a summary judgment against the plaintiff. The affidavit is by Noren Eaton, attorney for the defendant in both actions; a copy of the complaint in the earlier case is set forth as exhibit "A" and a copy of the answer as exhibit "B"; the affidavit alleges that the cause came on for trial before the Honorable William S. Lee, judge presiding, on July 11, 1962, and that thereafter judgment was entered in favor of LaVey Louk Dryer and against the plaintiff; a copy of the findings of fact and conclusions of law is

set forth as exhibit ''C''; and a copy of the judgment that followed is attached and marked exhibit ''D.''

The affidavit continues: ''That the parties in this action and in action No. *[89131] are the same, and are suing and being sued in the same capacity as in No. *[89131]. That the properties referred to in action No. *[89131] are the same as the properties which are the subject of this action. That the cause of action of plaintiff herein, namely the recovery of properties, is the same in this action as that in No. *[89131]. That /in/ the original complaint No. *[89131], this plaintiff urged as a ground of his complaint the same charge of fraud as set forth in this complaint but in filing his amended complaint, omitted that ground.

''That by reason of the foregoing, this affiant alleges that this matter is res adjudicata.''

In the earlier case, the court found that the plaintiff was the administrator of his father's estate; that the father left four children surviving him and the defendant as his widow; that the illness and death of his first wife did not cause ''a marked and substantial physical and mental deterioration in said decedent. . .''; that LaVey Louk Dryer did not promote or effect ''a scheme, plan and design to secure and obtain'' the assets and properties of decedent; that the second marriage of decedent was not a result of such a fraudulent motive; that the allegations of paragraph VI in complaint No. 89131, reading as follows, were untrue:

''That subsequent to said marriage ceremony on February 14, 1960 and prior to decedent's death on May 6, 1960 and while said decedent was still in a weakened physical and mental condition, said defendants, and each of them, took an unfair advantage of said decedent by causing said decedent to transfer and convey to said defendants, without any consideration from said defendants, all of his property, assets and estate, either individually to defendant LaVey Louk Dryer, or in joint tenancy with said defendant, LaVey Louk Dryer, and by naming said defendant, LaVey Louk Dryer, as the beneficiary of life insurance policies and other benefits and entitlements accruing and arising upon said decedent's death.''

The findings in the earlier case were complete in their holding that the claims of the plaintiff as against the defendant were wholly without foundation and that the defendant held

*By typographical error, the number of the earlier case was incorrectly stated to be 81913; no point is made thereof by appellant.

all of the property legally. The plaintiff never perfected an appeal.

The motion for a summary judgment in the instant case was opposed by the filing of the following documents:

1. A statement entitled "Opposition to Motion for Summary Judgment," in which it was alleged that the present action consists of a cause of action separate and distinct from that by the court in the prior case, and that the present suit involves factual matters which could not be determined summarily on a motion for summary judgment;

2. Declarations of James M. Dryer and James A. Hayes which set forth factual matters some of which counsel for appellant claims were not disposed of in the earlier case and which he says are not subject to a summary judgment;

3. Points and authorities, as well as supplemental points and authorities, in opposition to the motion.

The trial court granted the motion, the summary judgment was entered in due course, and the plaintiff appealed.

■ The appellant's contention that a summary judgment cannot be granted on the ground of res judicata is wrong; the authorities clearly hold that res judicata is a proper ground upon which to grant a summary judgment (*Smith* v. *City of Los Angeles,* 190 Cal.App.2d 112, 128 [11 Cal.Rptr. 898]; *Stafford* v. *Ware,* 187 Cal.App.2d 227 [9 Cal.Rptr. 706]; *Olmstead* v. *Riley,* 135 Cal.App.2d 117, 121-122 [286 P.2d 579]; *Poochigian* v. *Layne,* 120 Cal.App.2d 757, 763-764 [261 P.2d 738]; *Gosnell* v. *Webb,* 66 Cal.App.2d 518 [152 P.2d 463]; 95 A.L.R.2d 654 et seq.; John A. Bauman, *California Summary Judgment: A Search for a Standard* (1963) 10 U.C.L.A. L. Rev. 347, 358; Civil Procedure Before Trial (Cont. Ed. Bar) pp. 852-853).

■ It is next contended that considering the moving papers and the affidavits in opposition thereto, the trial court did not have a legitimate basis upon which to grant the judgment. Again, appellant is wrong; he does not distinguish, as did the trial judge, between a cause of action and a ground of action. ■ This distinction as made in Freeman on Judgments (5th ed.) pages 1437-1438, where it is said: "Where the parties and the gist of the action are the same, differences in the grounds of action which do not change the substantial cause of action do not prevent the second judgment from operating as a bar. There is an obvious distinction between grounds of action and cause of action; a single cause of action may be based upon several grounds, in which event,

whether actually litigated or not, they are all merged in the judgment which bars a new action on the same cause of action on a different ground. Thus where a right to have a deed or a contract set aside is claimed, there is but a single cause of action though several grounds such as fraud, undue influence, and mental incapacity may be relied upon.''

Appellant urges that in the circumstances a cause of action based on fraud and deceit is a separate and distinct cause of action from one based on undue influence; and that there is a vital difference between the first complaint based on undue influence where the elements of the cause of action were the imposition of defendant's will upon decedent, decedent's weakened condition and the advantage obtained because of such influence, as opposed to the complaint in the second action where appellant stated the elements which we have examined in this opinion: false representations that defendant would care for decedent and for a minor child; reliance upon such false representations; and a transfer of title made upon such false representations. Appellant contends that the causes of action are separate and it was not necessary for appellant to join them though he could have done so under Code of Civil Procedure, section 427, but that he can bring separate suits on each cause of action even if joinder is permissive.

Respondent maintains that because the actions are between the same parties, involve the identical properties and seek to set aside the transfer procured by an allegedly scheming and corrupt woman from a husband said to be suffering from mental and physical deterioration, the prior judgment is conclusive; the claimed primary wrong is fundamentally the same although there is some difference in the grounds.

In *Little* v. *Smith,* 47 Cal.App. 8, 15 [189 P. 1059], the court stated: ''There are several grounds upon which a deed may be set aside under the law. Among them are fraud, undue influence, mental incompetency, duress, menace, etc. If a party is allowed to urge one ground at a time, or even all grounds except one or two, it would result in piecemeal and endless litigation, which, as we have seen from the authorities above cited, the law seeks to avoid.''

*Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636, 638-639 [134 P.2d 242], discusses the subject as follows: ''The cause of action is simply the obligation sought to be enforced. [Citing authorities.] The negligence of defendant alleged in the prior action and that alleged against it in this action

represent but different invasions of plaintiff's primary right and different breaches of the same duty that it owed to him. There was one injury and one cause of action. A single tort can be the foundation for but one claim for damages. [Citing authorities.]

" . . . . . . . . . . . . . . . . . .

"The subject is adequately summarized in the Restatement, *supra* [Restatement of the Law of Judgments, section 63, comment a.], as follows:

" 'Where an action is brought to recover damages for injury to the person or property of the plaintiff caused by the defendant, and the plaintiff in his complaint alleges certain negligent acts of the defendant, and at the trial he is unable to prove these negligent acts and a verdict and judgment are given for the defendant, the plaintiff is precluded from maintaining a subsequent action based upon the same injury, although in that action he alleges other acts of negligence. There is in such a case a single cause of action, based upon the primary right of the plaintiff to be free from injury to his person or property and a violation by the defendant of that right through his failure to use proper care. The plaintiff is not permitted to maintain successive actions for the same injury by alleging different acts of negligence on the part of the defendant. It is immaterial that in a subsequent action he alleges acts of negligence which he was not permitted to prove in the prior action because they were not alleged in his complaint in that action.' "

In *Merchants Fire Assur. Corp.* v. *Retail Credit Co., Inc.*, 206 Cal.App.2d 55, 63 [23 Cal.Rptr. 544], it was stated that a party may not split up a single cause of action and make it the basis of separate suits; a judgment in the first action may be pleaded in abatement of any subsequent suit on the same basic claim because "The cause of action is the obligation sought to be enforced, or the primary right which was involved. New legal theories do not make new causes of action. [Citing authorities.] The transaction, the acts done, the legal duties and the primary rights involved in the second case are the very same as in the former."

In *Wood* v. *DeLuca*, 211 Cal.App.2d 507, 513 [27 Cal.Rptr. 388], the court quoted from the opinion in *Panos* v. *Great Western Packing Co., supra,* 21 Cal.2d 636, 638, and also stated that: "Under the rule announced over and over again, there is no new 'obligation' claimed and therefore no new cause of action." (See also *High* v. *Cavanaugh,* 205 Cal.

App.2d 495, 500 [23 Cal.Rptr. 121]; *People* v. *Walling*, 195 Cal.App.2d 640, 648 [16 Cal.Rptr. 70]; *French* v. *Rishell*, 40 Cal.2d 477, 479 [254 P.2d 26].)

In *Little* v. *Smith, supra,* 47 Cal.App. 8, 14-15, the court quoted from Black on Judgments, volume 2, section 754, as follows: " 'A party cannot relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties or their privies in reference to the same subject matter. And if one of the parties failed to introduce matters for the consideration of the court that he might have done, he will be presumed to have waived his right to do so. If a party fails to plead a fact he might have pleaded, or makes a mistake in the progress of an action, or fails to prove a fact he might have proven, the law can afford him no relief. When a party passes by his opportunity, the law will not aid him.' "

We conclude that the plaintiff is suing a second time on the basic cause of action which was tried at length in the first case, and that the decision in the earlier action against him, as to which he failed to perfect an appeal, is conclusive with respect to the instant action. ██ There must be an end to litigation. A person cannot urge the same essential contention on two occasions when the decision of the court is against him on the first. ██ The reason for the enactment of the provision for summary judgments is to help clear the courts of an overload of repetitious suits when it appears that no factual issues exist in the second cause, or that one side or the other is wholly without right. ██ This action falls within that area, and it would seem that it was correctly decided by the trial court.

Some objection is made to the form of the affidavit filed by respondent's counsel in that he failed to allege in so many words personal knowledge of the facts referred to in the copies of pleadings which he attached to his affidavit and because he did not state explicitly his competency to testify as a witness as to any of the facts set forth therein. (*de Echeguren* v. *de Echeguren*, 210 Cal.App.2d 141 [26 Cal.Rptr. 562].) ██ It is true that the summary judgment section of the code (Code Civ. Proc., § 437c) does specifically require that the affidavit in support of the motion for summary judgment must show that the facts stated therein are within the personal knowledge of the affiant, and that the affiant, if sworn as a witness, can testify competently thereto. This

provision is obviously designed to take care of the ordinary situation on motion for a summary judgment and is quite appropriate to such motions. If the affidavit states facts, they should be facts to which the affiant can legitimately testify.

Here, the essential question to be decided by the trial judge was whether or not the former judgment constituted res judicata of the questions posed by the pleadings in the instant action. The determination of this fact rested almost completely on the pleadings in the first case. Besides a reference to such pleadings in the earlier case, copies of which were attached to his affidavit, Mr. Eaton, the affiant, further stated that he had been one of the attorneys for the same defendant in the first case (action No. 89131), and that the parties and the properties referred to in the two suits were the same. It is true that the copies of the pleadings attached to the affidavit had not been certified as true copies by the clerk of the court; this should have been done as is indicated in the case of *Gardenswartz* v. *Equitable etc. Soc.*, 23 Cal.App.2d 745, 750 [68 P.2d 322]. However, there never has been any contention by the opposing side that the copies of the pleadings were not accurate in every respect. If there had been any inadvertence in setting forth the pleadings in the earlier case, it would have been easily ascertained. Neither the trial court nor opposing counsel has indicated that there was any difference between the copies of the pleadings in the affidavit and the actual original pleadings in the earlier case. It would seem clear, furthermore, that an attorney in the first case as well as in the second, such as Mr. Eaton, could properly testify to the other matters set forth in his affidavit. Thus, while the affidavit is not technically correct in all of its formal aspects, as indicated above, we believe that it would be picayunish to reverse a case for such minor and unimportant errors (Cal. Const., art. VI, & 4½).

Appellant has no right to raise the point which he most stresses in his briefs. He claims the judge in the first case was disqualified and that the earlier judgment was therefore void and could not constitute res judicata; in support of this allegation on his part, he says that after two hours of testimony when the trial judge called counsel into his chambers and suggested a compromise, Mr. Eaton, as attorney for the defendant came to the conclusion that the judge was prejudiced against his side of the controversy and, after securing a recess for the purpose of preparing an affidavit to that effect, he handed the judge an affidavit of disqualifica-

tion under section 170 of the Code of Civil Procedure; it is indicated in respondent's brief that the judge persuaded him not to insist upon the alleged disqualification but to continue with the trial.

There is nothing in the transcript which confirms, or even refers to, this contention of appellant. It is an attempt by him, contrary to appellate law, to raise a contention for reversal for the first time on the appeal. The point was not made below, and it is wholly unavailable to appellant. (*Imperial Valley Land Co.* v. *Globe Grain & Mill Co.*, 187 Cal. 352, 359-360 [202 P. 129]; *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390, 397 [264 P. 237]; *Damiani* v. *Albert,* 48 Cal.2d 15, 18 [306 P.2d 780]; *People* v. *Jordan,* 45 Cal.2d 697, 708 [290 P.2d 484]; *Afghan National Assn.* v. *Akbar,* 154 Cal.App.2d 97, 100 [315 P.2d 415]; *Estate of Cunningham,* 148 Cal.App.2d 8, 13 [305 P.2d 920]; *Farthing* v. *San Mateo Clinic,* 143 Cal.App.2d 385, 394 [299 P.2d 977]; *State Comp. Ins. Fund* v. *Maloney,* 121 Cal.App.2d 33, 42 [262 P.2d 662]; 3 Cal.Jur.2d, Appeal and Error, § 140, p. 604.)

 Allegations of fact relative to transactions at a trial which are not in the record, but only in the briefs, cannot be considered by an appellate court. (*People* v. *Wren,* 140 Cal. App.2d 368, 370 [295 P.2d 54]; *People* v. *Croft,* 134 Cal. App.2d 800, 804 [286 P.2d 479]; *Gantner* v. *Gantner,* 39 Cal.2d 272, 278 [246 P.2d 923].) As is said in *People* v. *Croft, supra*:

"No facts outside the record and no affidavits which were not before the trial court can be considered on appeal." (See also *People* v. *Agnew,* 16 Cal.2d 655, 660 [107 P.2d 601]; *Solomon* v. *Solomon,* 118 Cal.App.2d 149, 152 [257 P.2d 760]; *Estate of Tubbs,* 82 Cal.App.2d 305, 307 [186 P.2d 7]; *People* v. *Levine,* 114 Cal.App.2d 616, 617 [250 P.2d 645].)

As the court finds no error in the record, the judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.

A petition for a rehearing was denied January 19, 1965, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1965.