[Civ. No. 932. Fifth Dist. June 13, 1968.]

DONALD FRAZIER, as Trustee, etc., Plaintiff and Respond-
dènt, v. CLARENCE WASSERMAN et al., Defendants
and Appellants.

Thomas A. Wahl and Hibbitt & Tarbell for Defendants and Appellants.

Gray & Thurn and Richard T. Thurn for Plaintiff and Respondent.

GARGANO, J.—This is a judgment roll appeal. Appellants are former creditors of Leland F. Dempsey who was adjudicated a bankrupt under the federal Bankruptcy Act. Respondent is Dempsey's trustee in bankruptcy. The undisputed facts as stated in the respective briefs and as gathered from the court's finding of fact are substantially as follows.[1]

Leland F. Dempsey was an income beneficiary of a testamentary spendthrift trust known as the Jennie L. Mayer Trust. The trust terminated January 1, 1961; upon termination Dempsey was entitled to receive one-half of the corpus free and clear of all trust restrictions. However, Dempsey did not receive possession of his share of the trust proceeds amounting to $28,671 until February 10, 1961, when the Probate Court of Orange County, the court in which the Jennie L. Mayer estate was probated, distributed the trust estate.

Meanwhile (during the period between the termination of the trust and the distribution of the trust estate by the probate court) some of Dempsey's creditors filed claims in the probate proceeding against Dempsey's trust interest. And on the day before the trust estate was distributed (on February 9, 1961), two of Dempsey's creditors, Charles Cooper and Bernice Cooper, filed an involuntary petition in bankruptcy against Dempsey in the United States District Court.[2] But

---

[1] The record is implemented as to appellant Clarence Wasserman by an engrossed settled statement. However, we shall deal with the additional facts set forth in the engrossed settled statement as needed, when we consider appellant Wasserman's separate ground for reversal.

[2] Subsequently (the record does not show when), two other creditors, National Associates, Inc. and William R. Oakie, also joined in the petition.

the probate court, after reciting in its decree of distribution that the Mayer Trust was a spendthrift trust, nevertheless directed the trustee (the Bank of America) to distribute Dempsey's one-half share of the trust proceeds directly to Dempsey.

Subsequently (on April 26, 1961), Dempsey was adjudicated a bankrupt by the bankruptcy court. By that time Dempsey had delivered the proceeds of the trust to his attorney, appellant Thomas Wahl. Wahl in turn paid the money to himself and to the other appellants to discharge the antecedent debts which Dempsey had incurred under certain promissory notes that he had executed during the term of the trust. At the time of the payment all appellants (with the exception of appellant Wasserman) knew the source of payment and that bankruptcy proceedings were pending against Dempsey. Almost two years later (on February 8, 1963), respondent, the bankruptcy trustee, brought this action to recover the money which each appellant received from Dempsey's share of the Mayer Trust proceeds. The lower court granted judgment in favor of respondent, and this appeal followed.

Appellants first attack the judgment of the bankruptcy court. Succinctly, they contend that the judgment of the superior court must be reversed because there was "a fatal lack of jurisdiction of the Bankruptcy Court over any assets of Leland F. Dempsey." And, significantly, appellants make this contention without having raised this defense in their pleadings and apparently without having offered any evidence on the issue in the superior court.

It is of course true, as appellants maintain, that the jurisdiction of a lower court of this state to act may be challenged by direct attack for the first time on appeal (*King* v. *Kutner-Goldstein Co.*, 135 Cal. 65 [67 P. 10]). However, appellants do not challenge the jurisdiction of the Superior Court of Sacramento County in this appeal; they collaterally attack the judgment of the bankruptcy court, a court of the United States. It is the rule that if a prior judgment is the basis of relief in a lower court, that judgment must be challenged in the lower court before it may be collaterally attacked on appeal unless it is void on its face. And the challenge in the lower court is even more essential when the invalidity of the judgment is dependent upon extrinsic facts which the lower court did not have the opportunity to consider (*Dryer* v. *Dryer*, 231 Cal.App.2d 441, 445 [41 Cal.Rptr. 839]).

124

Appellants do not assert that the judgment of the bankruptcy court is void on its face. They merely assert that respondent's complaint in the superior court discloses that only two persons filed the petition in bankruptcy against Dempsey on February 9, 1961, and hence "the bankruptcy could not have been effective that day" under section 59 of the Bankruptcy Act. This section provides:

"Three or more creditors who have provable claims not contingent as to liability against a person, amounting in the aggregate to $500 in excess of the value of any securities held by them, or, if all of the creditors of the person are less than twelve in number, then one or more of the creditors whose claim or claims equal that amount, may file a petition to have him adjudged a bankrupt; . . ." (11 U.S.C.A. § 95.)

Appellants' contention is devoid of merit. Section 59 of the Bankruptcy Act also allows one creditor, whose claim amounts to at least $500, to file an involuntary petition against the debtor if all of the debtor's creditors are less than 12 in number. Thus, appellants ask this court to assume, as a matter of law, that Dempsey had at least 12 creditors when the petition was filed against him, contrary to the rule articulated in *Dryer* v. *Dryer, supra*. And, significantly, they ask this court to make this assumption despite the presumption of Evidence Code section 666 in favor of the validity of the bankruptcy court's judgment. Under this section, when any act of a court of the United States is under collateral attack it is presumed that the court acted in lawful exercise of its jurisdiction.

In any event, there is no contention that the bankruptcy court lacked jurisdiction in the fundamental sense, e.g., over the person of the bankrupt and the subject matter of the action. And lack of jurisdiction in the fundamental sense is essential to a collateral attack on a judgment (*Pacific Mut. Life Ins. Co.* v. *McConnell*, 44 Cal.2d 715, 725 [285 P.2d 636]). Consequently, when the bankruptcy court adjudicated Dempsey a bankrupt it also determined its own jurisdiction, and this determination is *res judicata* in subsequent collateral proceedings (*Stoll* v. *Gottlieb*, 305 U.S. 165 [83 L.Ed. 104, 59 S.Ct. 134]; *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371 [84 L.Ed. 329, 60 S.Ct. 317]; *Houston* v. *Pomeroy*, 227 Ore. 499 [362 P.2d 708, 710], 1 Collier, Bankruptcy (14th ed. 1956) § 2.05, p. 486).

In *Stoll* the United States Supreme Court held that when jurisdiction over the subject matter was raised and decided in

the bankruptcy court it could not be collaterally attacked in the state court.

In *Chicot* the appellants successfully attacked the jurisdiction of the bankruptcy court in the federal district court on the grounds that the bankruptcy court's determination of jurisdiction had been based on a now void statute so that its determination could not be res judicata in a later federal district court proceeding. The United States Supreme Court reversed on the ground that the appellants had not attacked the validity of the statute in the bankruptcy proceeding.

In *Houston* the Supreme Court of Oregon categorized the power of the bankruptcy court to determine its own jurisdiction as follows: " '. . . Moreover, any determination concerning its own jurisdiction, even though erroneous, is *res judicata* in a subsequent collateral proceeding. These principles apply even if the question of jurisdiction was not raised; and they apply to orders of the referee as well as those of the judge.' " (362 P.2d at p. 710.)

Appellants next contend the decree of distribution of the Probate Court of Orange County, distributing the proceeds of the Mayer Trust directly to Dempsey, is res judicata and defeats respondent's present claim. They argue that when the probate court distributed one-half of the corpus of the Mayer Trust directly to Dempsey, notwithstanding the claims of Dempsey's creditors which had been filed in the probate proceedings, it decided that Dempsey acquired his share of the trust corpus free and clear of his antecedent debts.

This contention is also without substantial merit. The probate court did not have jurisdiction to resolve any controversy between Dempsey and his creditors in a probate proceeding involving the estate of Jennie L. Mayer (*Estate of Stone*, 170 Cal.App.2d 533 [339 P.2d 220]; *Wilson* v. *Superior Court*, 101 Cal.App.2d 592 [225 P.2d 1002]). In any event, for the doctrine of res judicata to apply it must appear that (1) the issue decided on the merits in the prior proceeding is identical with the one presented in the subsequent litigation, and (2) the party against whom the doctrine is invoked was also a party (or in privity with a party) to the prior proceeding (*Dillard* v. *McKnight*, 34 Cal.2d 209 [209 P.2d 387. 11 A.L.R.2d 835]). Manifestly, respondent was not a party to the probate proceeding nor was he in privity with any of the creditors who filed claims in that proceeding. Furthermore, respondent's right to claim title to the trust

property, as the trustee in bankruptcy of Dempsey's estate under the Bankruptcy Act, was not presented to or considered by the probate court. Clearly, the claim which an individual creditor may have to a debtor's interest in a spendthrift trust after termination but prior to distribution of the corpus by a probate court is not the same as the claim which a trustee in bankruptcy would have against the same property under the Bankruptcy Act.

■ The remaining question, therefore, is whether Dempsey acquired his share of the Mayer Trust proceeds, after the trust terminated, free and clear of the claim of his trustee in bankruptcy as appellants assert, or whether title to these proceeds vested in the respondent under section 70 of the Bankruptcy Act. This section provides:

"All property, wherever located, except insofar as it is property which is held to be exempt, which vests in the bankrupt within six months after bankruptcy by bequest, devise or inheritance shall vest in the trustee [the trustee in bankruptcy] and his successor or successors, if any, upon his or their appointment and qualification, as of the date when it vested in the bankrupt, and shall be free and discharged from any transfer made or suffered by the bankrupt after bankruptcy.

"All property, wherever located, except insofar as it is property which is held to be exempt, in which the bankrupt has at the date of bankruptcy an estate or interest by the entirety and which within six months after bankruptcy becomes transferable in whole or in part solely by the bankrupt shall, to the extent it becomes so transferable, vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date of bankruptcy." (11 U.S.C.A. § 110.)

It is undisputed the testamentary trust of Jennie L. Mayer terminated on January 1, 1961, and the Probate Court of Orange County ordered distribution on February 10, 1961. The date of Dempsey's bankruptcy was February 9, 1961. Assuming January 1, 1961, was the date the property vested, then the trust corpus was property in which Dempsey had an interest on the date of bankruptcy which became transferable by him within six months of bankruptcy. Or, assuming the property did not vest until the proceeds of the Mayer Trust were placed in Dempsey's hands on February 10, 1961, then the bequest vested within six months after the date of bankruptcy and it was no longer exempt under the state law of trusts from claims of either creditors or the trustee in bank-

ruptcy. Consequently, under either alternative, title to Dempsey's share of the Mayer Trust proceeds also vested in respondent as Dempsey's trustee in bankruptcy.

 Appellants argue that a donor ''has the right to give his property under any conditions he sees fit and that the beneficiary's creditor, whether prior or subsequent, has nothing of which to complain since the gift takes nothing from him to which he previously had the right to look for payment.'' Be this as it may, the donor of a spendthrift trust can only protect his gift from the claims of the beneficiary's creditors during the life of the trust. Therefore, once the corpus of a spendthrift trust vests in the beneficiary and is placed in his hands, or under his direct control, it may not only be dissipated by the beneficiary contrary to what the donor may have wanted, but it may also be reached by the beneficiary's creditors through attachment or execution to satisfy his debts (antecedent or otherwise).

Appellants also rely on *Kelly* v. *Kelly*, 11 Cal.2d 356 [79 P.2d 1059, 119 A.L.R. 71], to support their contrary position. They apparently assume that our Supreme Court has held that property received from a spendthrift trust after the trust has terminated can never be reached to satisfy antecedent debts. Accordingly, they seemingly conclude that the property is exempt from operation of the Bankruptcy Act, section 70.

The *Kelly* decision does not stand for the proposition advocated by appellants. In that case the Supreme Court merely held that the assignment of the corpus of a spendthrift trust during the life of the trust is ineffectual to convey any interest in the trust corpus to the assignees. Significantly, however, the court also stated that the beneficiary could be sued for the breach of his contract of assignment. Moreover, the court stated that once a trust has terminated and the corpus is in the hands or under the control of the beneficiary, it can be reached by execution to satisfy a judgment against the beneficiary for the breach of his assignment contract.

We shall now direct our attention to the separate contention of appellant Wasserman.

 Appellant's only additional contention for reversal is that respondent was guilty of laches and unreasonable delay in bringing this action. He argues:

''. . . that he [Wasserman] is the holder of a promissory note, the makers of which are the Bankrupt, Leland F. Dempsey, and Wilda L. Dempsey, and that said promissory note was assigned and is guaranteed by a party upon whose

guarantee the defendant, Clarence Wasserman, solely relied and to whom he advanced funds personally (Defendant Wasserman's Exhibit A) rather than to the Bankrupt named herein and to whom he looked at all times for repayment of such moneys advanced. It is contended by defendant, Clarence Wasserman, that the sum received was received from the guarantor, as Clarence Wasserman had no knowledge of the personal affairs of Leland F. Dempsey, nor no notice of the pending bankruptcy proceedings, nor was Clarence Wasserman personally acquainted with the Bankrupt.

"Defendant, Clarence Wasserman, is informed and believes that the financial position of the aforementioned guarantor has materially changed subsequent to the initiation of these various proceedings, much to the prejudice of defendant, Clarence Wasserman, in that he is further informed and believes that the assets of said guarantor have become considerably depleted in the interim."

Wasserman's arguments are difficult to follow. We cannot tell whether he is asserting that he gave value for the money which he received from the Mayer Trust proceeds within the meaning of section 70(d)(1) of the Bankruptcy Act, or whether he is relying solely on laches or estoppel. Section 70(d)(1) provides:

"A transfer of any of the property of the bankrupt, other than real estate, made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred; . . ." (11 U.S.C.A. § 110.)

It is of course true that according to the engrossed settled statement Wasserman testified that Dempsey's promissory note was assigned to appellant by Theodore Harkins who guaranteed it and to whom appellant advanced moneys personally. It is also true that Wasserman testified that he did not know the money he received came from Dempsey's trust estate or that Dempsey was facing bankruptcy. Thus, if Wasserman in fact discharged a debt owed to him by someone other than Dempsey without knowledge that the money came from Dempsey's estate, it is at least arguable that he qualified as a person who paid value under section 70(d)(1). However, notwithstanding Wasserman's testimony, the trial court did not find that the money Wasserman received out of the Mayer Trust proceeds was in payment of Harkins' debt. On the contrary, the trial court expressly found that all of the Mayer

Trust proceeds (including the $2,500 payment to Wasserman) were used for the purpose of extinguishing Dempsey's own antecedent debts. And, significantly, the court did so notwithstanding appellant Wasserman's objection. Thus, since this is a limited record, we have no way of knowing what other evidence the court considered and we must assume that there was substantial evidence to justify the court's crucial finding.[3]

In any event, Wasserman did not testify nor does he contend that he discharged Harkins' debt.[4] And his bald assertion that he was prejudiced by respondent's delay in filing the lawsuit is not supported by the record. In fact, appellant goes outside of the record to assert that his "guarantor's" financial position has materially changed. And worse yet, he does so on information and belief.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 8, 1968.

[3]As we have indicated, the engrossed settled statement merely relates Wasserman's testimony. However, respondent does not admit the truth of the facts asserted in this testimony.

[4]Wasserman does not even refer to Harkins in his brief as the principal debtor. He refers to him in his brief as the guarantor of Dempsey's debt.