Filed 9/23/13  Lambert v. U.S. Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THOMAS H. LAMBERT et al., | B240359 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BP066539) |
| v. | |
| U.S. BANK, N.A., as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marvin M. Lager, Judge.  Affirmed.

Lambert Law Corporation and Thomas H. Lambert for Plaintiffs and Appellants Thomas H. Lambert and Seacrest West, Inc.

Glaser Weil Fink Jacobs Howard Avchen & Shapiro, Barry E. Fink, Elizabeth G. Chilton and Alexander M. Kargher for Defendant and Respondent.

_____

Thomas H. Lambert and his company, Seacrest West, Inc., appeal from the probate court's order denying their petition to instruct U.S. Bank, N.A., trustee of the Janice L. Taubman 1990 Trust, to distribute trust assets to them in accordance with assignments made by Richard Taubman, a trust beneficiary. Lambert and Seacrest (collectively the Lambert parties) contend the court erred in concluding the assignments violated a spendthrift clause in the trust and therefore could not be used to reach trust assets. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Janice L. Taubman 1990 Trust*

In 1990 Janice[1] established a revocable intervivos trust naming herself as sole trustee and her children, Anne and Richard, as beneficiaries. When she died in September 1999, the trust became irrevocable. Under the trust's terms Janice's various ownership interests in Seaport Village, a shopping center and tourist attraction in San Diego, were placed in a subtrust (the Seaport Village subtrust) for Anne; Richard and his son, Wyatt, were named as contingent beneficiaries of the Seaport Village subtrust, entitled to benefit from those assets only if Anne did not survive Janice by 10 years. The subtrust's assets were to be distributed 10 years from Janice's death.

Janice's interests in business ventures other than Seaport Village, primarily interests in oil and gas leases, were placed in a subtrust for Richard. Under the terms of that subtrust net income was to be distributed to Richard in monthly or other convenient installments along with any additional funds the trustee deemed necessary in its discretion for the health and education of Richard and his son. The trust also required the trustee to pay out of the principal of Richard's share, in monthly or other convenient installments, any sums he requested not exceeding an aggregate annual sum of $100,000. Under the trust's distribution schedule any remaining balance of the subtrust was to be

---

[1] Because Janice Taubman and her children, Richard and Anne Taubman, beneficiaries of the trust, share the same name, we refer to each of them by first name for clarity and convenience. (See *Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1; *Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn. 13.)

distributed to Richard 10 years from Janice's death. Wyatt was a contingent beneficiary of Richard's subtrust, entitled to benefit from that subtrust only if Richard did not survive Anne by 10 years.

Janice declared in the trust instrument her intent to divide the trust assets equally between Anne and Richard. To effectuate this intent, the trust expressly provided for an equalizing payment, if necessary, at the time of final distribution of trust assets.

2. *The Trust's Spendthrift Provision*

The trust contained a spendthrift provision: "No beneficiary of any Trust created hereunder shall have any right, power, or authority to sell, assign, pledge, encumber, mortgage, or in any other manner, hypothecate, alienate, or impair all or any part of such beneficiary's interest in the principal or income [of the trust.] The beneficial and legal interest in the Trust, as well as both the principal and income of the Trust property, shall be free from the interference or control of any creditor of any beneficiary of the Trust Property thereof, and shall not be subject to the claims of any such creditor, nor liable for attachment, execution, bankruptcy, or other process of law."

3. *The Trust Litigation and Richard's Assignments to the Lambert Parties*

Following Janice's death, the trust became the subject of contentious litigation between Richard and Anne and between Anne and U.S. Bank, the trustee.[2] During a portion of this litigation, which has now lasted more than a decade, Lambert, an attorney, represented Wyatt's contingent interests in the trust.

On December 14, 2010 Richard assigned certain of his interests in trust property to the Lambert parties as payment for Lambert's fees for legal services rendered on behalf of Wyatt.[3]

---

[2] See *Estate of Janice L Taubman* (Sept. 15, 2004, B170510) (nonpub. opn.); *Taubman v. U.S. Bank* (Oct. 24, 2007, B177712, B185170) (nonpub. opn.); *Taubman v. Taubman* (Jun. 18, 2008, B194074) (nonpub. opn).

[3] According to the terms of the assignment documents, Richard assigned 1 percent of his interests in Seaport Village Operating Company, or $1 million in the event Richard did not actually receive 1 percent of Seaport Village prior to the final termination of the

On January 28, 2011 the court issued its final judgment and decree in regard to several matters in the litigation. Among other things, the court found Richard had been overpaid during the term of the trust through no fault of the trustee. The court also found, in light of actions taken by Anne in 2001-2003 resulting in the transfer of Seaport Village trust assets to another entity she controlled, modification of the trust was necessary to effectuate Janice's intent that Richard and Anne receive an equal distribution of trust assets. To this end, the court terminated the two subtrusts and directed the trustee to make an in-kind distribution of trust assets (except for the Seaport Village assets) to Anne to satisfy the amounts owed to her; Seaport Village assets were to be divided in-kind evenly between Anne and Richard, subject to the amounts Richard owed Anne, which would, until paid, constitute an equitable lien in favor of Anne on Richard's pro-rata interest in the Seaport Village trust assets. The court declined Anne's request to terminate the trust and discharge the trustee, explaining that such a ruling would have to await an amended final accounting to take into account the value of Anne's equitable lien, Richard's oil and gas interests, which still needed to be valued, and the actual value of a projected tax refund. The court also found Wyatt's contingent interests in the trust assets had lapsed because both Anne and Richard had survived Janice by 10 years.

4. *The Lambert Parties' Petition for Instructions Regarding the Assignments*

On April 5, 2011 the Lambert parties petitioned for instructions pursuant to Probate Code section 17200 regarding implementation of the assignments. On May 26, 2011, in advance of a hearing on the petition, the Lambert parties and Richard entered into a stipulation "reconfirming and clarifying the assignment."[4] On August 12, 2011 the

trust, to Lambert. Richard also assigned a 1 percent interest in Seaport Village Operating Company to Seacrest and, in exchange for a cash payment, the option to purchase an additional 1 percent of the company.

[4] The reconfirmation of the assignment also recharacterized the property assigned, stating that 1 percent membership in Seaport Village Operating Company that was previously assigned may be deemed the equivalent of 4 percent absolute ownership of San Diego Seaport Village, LTD and San Diego Seaport Village, Inc.

4

Lambert parties filed a first amended petition seeking instructions concerning how, when and in what manner the assignments could be implemented.

On March 15, 2012, following a full hearing on the matter, the court denied the first amended petition to implement the assignments, explaining the assignments were invalid because they violated the spendthrift provision of the trust.

## DISCUSSION

1. *Standard of Review*

The probate court's legal determinations, including the legal effect of its orders, are reviewed de novo when they do not depend on resolution of any disputed facts. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800; *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1032; *Estate of Wilson* (2012) 211 Cal.App.4th 1284, 1290.) The court's resolution of factual disputes are reviewed for substantial evidence. (*Professional Engineers,* at p. 1032; *In re David H.* (2008) 165 Cal.App.4th 1626, 1633.)

2. *The Probate Court Did Not Err in Ruling the Assignments to the Lambert Parties Were Prohibited by the Spendthrift Provision of the Trust*

a. *Governing law*

"'A spendthrift trust is created where the settlor gives property in trust for another, and provides that the beneficiary cannot assign or otherwise alienate his or her interest, and that it shall not be subject to the claims of the beneficiary's creditors.'" (*Chatard v. Oveross* (2009) 179 Cal.App.4th 1098, 1104; see Prob. Code, § 15300 [authorizing creation of spendthrift trust].) The spendthrift provision "protects the income and principal interests of the beneficiaries from third party claims as long as the income or principal is properly held by the Trust." (*Chatard,* at p. 1106; see Prob. Code, § 15301, subd. (a) ["[i]f the trust instrument provides that a beneficiary's interest in principal is not subject to voluntary or involuntary transfer, the beneficiary's interest may not be transferred and is not subject to enforcement of a money judgment until paid to the beneficiary"]; *Frazier v. Wasserman* (1968) 263 Cal.App.2d 120, 127 ["assignment of

5

the corpus of a spendthrift trust during the life of the trust is ineffectual to convey any interest in the trust corpus to the assignees"].)

        b. *The spendthrift trust has not terminated*; *distribution was not unreasonably delayed*

Acknowledging the restraint on assignment inherent in a spendthrift trust, the Lambert parties contend the trust, including its spendthrift provision, had terminated according to its terms on September 5, 2009, 10 years after Janice's death. (See Prob. Code, § 15407, subd. (a) [trust terminates when term of trust expires].) By the time Richard assigned his interests in trust assets to them, they argue, the spendthrift provision had expired. However, as the court's January 28, 2011 judgment and decree makes clear, the trust did not terminate. The court modified the trust's distribution provisions, which required distribution 10 years after Janice's death, and denied requests to terminate the trust and distribute assets to Richard in accordance with the proposed distribution schedule, concluding any distribution to Richard would have to await an amended final accounting to take into account the value of Anne's equitable lien, Richard's as yet unvalued oil and gas interests and the actual value of a projected tax refund.[5]

Alternatively, relying on *Frazier v. Wasserman, supra,* 263 Cal.App.2d 120, the Lambert parties assert, whether or not the trust terminated, the trust assets effectively became "distributable" to Richard on September 5, 2009 when his interest in trust assets vested. *Frazier,* however, holds only that, "once the corpus of a spendthrift trust vests in the beneficiary and is placed in his hands, or under his direct control, it may not only be dissipated by the beneficiary contrary to what the donor may have wanted, but it also may be reached by the beneficiary's creditors . . . ." (*Id.* at p. 127.)

Here, as we explained, while Richard's contingent interest in the trust had become vested prior to the assignments, trust property he purported to assign had not been

---

5     The court stated in its January 28, 2011 judgment, "The request that the [Trust] be terminated immediately and distributed in shares to [Richard] and [Anne] per the Distribution Schedule attached to the Final Account and Petition for Instructions, outright and free of trust, subject only to the allocation and charging of certain administrative expenses, is DENIED."

6

distributed to him or placed under his direct control. Thus, the spendthrift provision in the trust precluded him from transferring it. (See *Frazier v. Wasserman, supra,* 263 Cal.App.2d at p. 127; *Chatard v. Oveross, supra,* 179 Cal.App.4th at p. 1104.)

Property that unreasonably remains in the trust may be sought by a beneficiary's creditors or transferees notwithstanding a spendthrift provision. (See Rest.3d Trusts § 58, com. d(2), p. 361 ["[P]roperty that has become distributable to the beneficiary but is retained by the trustee beyond a time reasonably necessary to make distribution to the beneficiary, and thus to which the beneficiary has a right to demand immediate distribution" may be subject to attachment by the beneficiary's creditors, notwithstanding the existence of a spendthrift clause in the trust].) However, the probate court expressly found distribution of trust assets to Richard had not been unreasonably delayed by the trustee: Distribution to Richard had "been delayed by the trustee because of circumstances beyond [the trustee's] control. The trust needed to wait until late 2011 or early 2012 to receive [an anticipated federal] tax refund of around $6 million. A significant tax refund . . . sought from two states has delayed a determination of the amount of the equitable lien. Valuation of oil and gas interests owned by the trust has [also] required substantial effort and [caused] attendant delay, and has not yet reached resolution."

The Lambert parties do not directly attack these findings, which are, in any event, amply supported by the record. Instead, they contend any delay in distribution was unnecessary because the only reason for it was to protect Anne's equitable lien and they have agreed to subordinate their assignments to Anne's equitable lien. The argument misapprehends the governing law and the effect of the court's January 28, 2011 judgment, which precluded the trustee from making any in-kind distribution to Richard until the full amount of the trust could be valued and Anne's equitable lien satisfied. As long as the distribution was not "unreasonably delayed," the spendthrift clause restrained Richard's transfer of trust assets.

7

c. *Judicial estoppel does not apply*

Similarly without merit is the Lambert parties' judicial estoppel argument, premised on statements made by the trustee in its proposed statement of decision and its proposed judgment in the underlying matter. The doctrine of judicial estoppel applies when "'"(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two position are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake."'" (*People v. Castillo* (2010) 49 Cal.4th 145, 155; accord, *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.)

In a proposed statement of decision and again in its proposed judgment in the underlying litigation, the trustee asserted the trust had terminated and only existed "to the extent the trustee needs to wrap up the affairs of the trust." The court rejected that characterization and refused to terminate the trust and allow distribution until a final accounting and other valuations could be made. There is simply no basis for applying judicial estoppel in this case.

d. *The Lambert parties have forfeited their argument that Probate Code section 15301 authorizes a restraint on transfer of money but not in-kind assets*

The Lambert parties also argue spendthrift clauses prohibit transfers of money, but not a transfer of in-kind assets, which Richard purported to assign to them. They rely on language in Probate Code section 15301, subdivision (a), which authorizes the creation of a spendthrift trust and provides a beneficiary's "interest in principal may not be transferred and is not subject to enforcement of a money judgment until *paid* to the beneficiary." (Italics added.) Asserting that in-kind assets are "distributed," not "paid," they offer the dubious argument the Probate Code only authorizes a settlor to restrain a trust beneficiary's transfer of money, not in-kind assets. This argument, raised for the first time in their reply brief, is forfeited. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["[o]bvious reasons of fairness militate against consideration

8

of an issue raised initially in the reply of an appellant"]; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [same].)[6]

### 3. *The Lambert Parties Are Not Without a Remedy*

Citing Civil Code section 3523, the Lambert parties' insist it is unjust to uphold the spendthrift provision and invalidate their assignments because such a ruling effectively deprives them of any remedy. (See Civ. Code § 3523 ["[f]or every wrong there is a remedy"].) Not so. Once trust assets are "in the hands or under the control of the beneficiary," they can be reached by the beneficiary's creditors. (See *Frazier v. Wasserman, supra,* 263 Cal.App.2d at p. 127; accord, *Kelly v. Kelly* (1938) 11 Cal.2d 356, 364 ["It is the essence of a spendthrift trust that it is not subject to voluntary alienation by the *cestui*, nor subject to involuntary alienation through attachment or other process at the suit of his creditors. [Citations.] But it is everywhere agreed that after the beneficiary has actually received the trust property his creditors may reach it and he may dispose of it as he wishes"]; see also *Kelly*, at pp. 363-364 [assignee of beneficiary's interest in spendthrift trust has recourse against the beneficiary for breach of the assignment contract].)

---

[6] The argument also fails on its merits. The restraint on transfer authorized in Probate Code section 15301 specifically applies to "principal," not simply money. The term "paid" refers to those assets that can be subject to enforcement of a money judgment and prohibits their use for that purpose until paid to the beneficiary. (See Prob. Code, § 15301.) To interpret Probate Code section 15301 in the manner the Lambert parties suggest not only would be contrary to the language of the statute, but would also undermine the very purpose of a spendthrift trust—to permit trust assets designated by the settlor to be distributed to the beneficiary free and clear of all liens at the time of distribution. (*Kelly v. Kelly* (1938) 11 Cal.2d 356, 364; see *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [statutes are to be interpreted with a view toward """promoting rather than defeating [their] general purpose . . . and avoid[ing] an interpretation that would lead to absurd consequences""""].)

**DISPOSITION**

The March 15, 2012 order is affirmed.  U.S. Bank, as trustee of the Janice L. Taubman 1990 Revocable Trust, is to recover its costs on appeal.

                                                    PERLUSS, P. J.

We concur:


        WOODS, J.


        ZELON, J.

10